LEORA ARNE, Appellee, v. WESTERN SILO COMPANY et al., Appellants.

LEORA ARNE, Appellant, v. JAMES MANUFACTURING COMPANY et al., Appellees.

No. 41265.

MAY 13, 1932.

512

George C. Claassen, for Leora Arne, appellee-appellant.

Miller, Miller & Miller, for Western Silo Co., appellants.

Carl F. Jordan, for James Mfg. Co., appellee.

DE GRAFF, J.—The facts in this case are somewhat involved because two separate actions were consolidated for trial. Separate decisions were filed by the Deputy Industrial Commissioner, but a joint decision was filed by both the Industrial Commissioner, on review, and the District Court, on appeal. The record is very voluminous on account of the many exhibits introduced by the several parties.

This cause is not triable *de novo* here. Jones v. Eppley Hotels Co., 208 Iowa 1281; Mallinger v. Webster City Oil Co.,

211 Iowa 847; Arthur v. Marble Rock Cons. Sch. Dist., 209 Iowa 280, with cases cited.

Section 1441 Code 1927 provides:

"While sitting as a board of arbitration, or when conducting a hearing on review, or in making any investigation or inquiry, neither the board of arbitration nor the commissioner shall be bound by common law or statutory rules of evidence or by technical or formal rules of procedure; but they shall hold such arbitrations, or conduct such hearings and make such investigations and inquiries in such manner as is best suited to ascertain and conserve the substantial rights of all parties thereto. Process and procedure under this chapter shall be as summary as reasonably may be."

On the construction of the foregoing statute, see Swim v. Central Iowa Fuel Co., 204 Iowa 546, with cases cited; Baker v. Roberts & Beier, 209 Iowa 290.

Under Section 1421 Code 1927 the definition of "workman" or "employee" is given as meaning "a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified. 3. The following persons shall not be deemed 'workmen' or 'employees' * * * c. An independent contractor."

This definition, of course, is confined strictly to the scope and limits of the so-called "Workmen's Compensation Act," and thus restricts, for that purpose only, the meaning of the words defined. It is evident by the words employed that while an independent contractor may be an "employee" in the usual sense, he is not under a contract *of* service but, rather, he is under a contract *for* service as respects the Workmen's Compensation Act.

Lee E. Arne, the deceased husband of the appellee-appellant, Mrs. Leora Arne, entered into a contract with the Western Silo Company on January 19, 1929.

This action was commenced in the first instance by the decedent's widow to establish compensation obligation against both the Western Silo Company and the James Manufacturing Company and their respective insurance carriers.

On March 1, 1929, at a place about eight miles southeast of

Wilton, Iowa, Arne met his death through a collision of his automobile with an Interurban Railway car after having visited a farmer for the purpose of soliciting an order for a hog house, a product of the Western Silo Company. The question at issue is whether at the time of Arne's fatal injury his status and relationship with the Western Silo Company were that of an employee or of an independent contractor. Arne's working contract with the Silo Company states in the first paragraph thereof that "the first party (Silo Co.) has this day appointed the second party (Arne) as agent to sell its products." Payment was to be made on a commission basis, Arne to furnish his own transportation and pay all of his own expenses. Any assistant sent out by the Silo Company to aid Arne was to be regarded as the agent of Arne, acting under his control, and for whom Arne should be responsible. Arne was also obligated to pay any such assistant sent out by the Silo Company. The Silo Company reserved the right to have others canvass his assigned territory, if Arne failed to canvass properly the same. The contract was subject to cancellation "by either party at any time."

The contract in question must be viewed and construed as a contract *for service* (not *of service*), and therefore is a contract indicating independent employment which is excluded as compensable under the provisions of the Iowa Compensation Law. A mass of exhibits, which in lettering exhaust the letters of the alphabet, are found in this record. An examination of them does not strengthen the claim of the claimant. These exhibits plainly show that Arne was on his own time and expense. He depended on his commissions for expenses, as well as profit, and was under obligation for delivery of such orders only, as he might secure. The Home Office of the Silo Company wrote Arne, as well as other agents of the Silo Company, that "we maintain a service department to help you to arouse interest * * * and to help make it easier for you to close sales. We are prepared to furnish free of charge electrotypes and stereotypes for newspaper advertising. If you care to do any advertising at your own expense in your local paper, this service is available to you." Under Arne's working agreement and consistent with all the record, Arne's time was his own. He was working under another agreement with the James Manufacturing Company, which company, as well as the Silo Company, had full know-

ledge and understanding that Arne was so working for both companies. Arne was at liberty to work for either company or both companies at the same time. The instant record discloses that an attempt was made to prove that when Arne left the farm, just prior to his death, he intended to perform service on behalf of the James Manufacturing Company. It is recognized law that a person does not deprive himself of the right of recovery by working for more than one employer at a time, if the relation of employer and employee exist. Sargent v. Knowlson Co., 195 N. W. 810 (Mich.).

In the case at bar Arne used methods of his own choosing in the pursuit of business. He made his own schedule and worked it as he pleased. If he earned commissions, the Silo Company received profits, and this was the full extent of mutuality of interest. In the examination of our own decisions we find pertinent language that is applicable to the legal principle involved in this case. In Pace v. Appanoose County, 184 Iowa 498, it is said:

"The test oftenest resorted to, in determining whether one is an employee or an independent contractor, is to ascertain whether the employee represents the master as to the result of the work, or only as to the means. If only as to the result, and himself selects the means, he must be regarded as an independent contractor. * * * (Citing cases.) The mere fact that the owner may have an overseer or architect to see that the work complies with the contract, or that the work is to be to the owner's satisfaction, does not change the character of the contract, if it meets the test stated. * * * Whatever the other conditions of the contract may be, if in its essential features, it provides that the employer retain no control over the details of the work, but leaves to the other party the determination of the manner of doing it, without subjecting him to the control of the employer, the party undertaking to do the work is a contractor, and not a mere employee."

In Norton v. Day Coal Co., 192 Iowa 160 it is said:

"The relationship of master and servant does not exist, unless there be the right to exercise control over methods and detail,—to direct how the result is to be obtained. The power to

direct must go beyond telling what is to be done,—to telling 'how it is to be done.' * *· * It is elementary doctrine, and it would fill many pages to cite the support it has, that one is not an employee if he may choose his own method of working,—the mode and manner of doing the work. * * * It is not enough that there be power to see to it that the work is done to the satisfaction of the one who gives it. This power is control over ultimate results and not over methods, means, and details. * * * The mere making of suggestions as to the methods of work to be pursued will not establish the relationship of master and servant, even though the suggestion be as to details or as to the co-operation necessary to bring about the larger general result.''

It is apparent that Arne, under his working agreement with the Silo Company, represented said company only as to results, selecting his own methods and means. The Silo Company gave instructions as to what was to be done without telling Arne how it was to be done. The Silo Company assumed control over ultimate results, but not over methods, means and details.

An independent contractor within the generally accepted legal definition of the term is: a person who in the pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods, without submitting himself to the control of such person in respect to all of its details. An independent contractor represents the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. Mallory vs. La. Pure Ice & Supply Co., 6 S. W. (2nd) 617 (Mo.); Moody v. Industrial Acc. Comm., 269 Pac. 542. (Cal.), 60 A. L. R. 299; Arthur v. Marble Rock Cons. Sch. Dist., 209 Iowa 280.

. . An independent contractor is defined as ''one who contracts to do a specific piece of work, furnishing his own assistants, and executes the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work.'' 26 Cyc. 970.

See, also, Prairie Oil & Gas Co. v. Wright, 238 S. W. 974 (Tex.), 19 A. L. R. 227 et seq. The controlling issue in determining the question of an independent contract is, Who has the

direction of the details of the employment? In every case which turns upon the nature of the relationship between the employer and the person employed, the essential question to be determined is whether the employee had the right to exercise control over the details of the work. If the employer has control of what is to be done (the definite purpose to be accomplished) as well as the material details as to how the work is to be done, then clearly the laborer is the employee or servant of his employer. The fact that the employer has exclusive control is not conclusive of the fact that he had a right to do so, altho such fact has probative force. Carleton v. Foundry & Mach. Prod. Co., 165 N. W. 816 (Mich.); 19 A. L. R. 1141; C. R. I. & P. R. R. Co. v. Bond, 240 U. S. 449, 60 L. Ed. 735; 39 C. J. 1318 *et seq.*

In the construction of a contract involving a contractor's relationship, the contract must be construed from "its four corners" and not from an isolated paragraph. Courts must declare the intention of the parties from the language employed in the entire instrument, regardless of the classification of the parties as determined by themselves, bearing in mind that it is not the nomenclature which the contract uses, but the provisions which it makes for control of the details of the work that determine the status of the parties. See In re Estate of Amond, 203 Iowa 306; Burns v. Eno, 213 Iowa 881; Storm v. Thompson, 185 Iowa 309; Badger Furniture Co. v. Industrial Comm., 227 N. W. 288 (Wis.); Schneider's Law of Workmen's Compensation (2nd Ed. 1932), Vol. I, Sec. 37, p. 284 *et seq.*

The record before us shows that before February 19, 1929, the deceased Arne had also been devoting his time and energy in the sale of the products of the James Manufacturing Company, appellees, but for how long and on what basis, the record is silent. A memorandum reading as follows was found among the effects of the deceased:

"This is to advise that Lee E. Arne will continue to work for the James Manufacturing Company on a commission basis. Mr. Arne will work on the basis of 20% on unassisted sales other than poultry equipment and 25% on unassisted poultry equipment sales. He will receive 10% on assisted sales or the amount specified on the order as the order is added to. Mr. Arne will receive no advances other than to receive the commission on the

orders that he sells as they become due. Mr. Arne will work in both Jim Cody's and H. A. Hallman's territory, but will concentrate in the counties of Linn and Johnson, however, all of the prospects are to be referred to Hallman, who in turn will forward them to Mr. Arne for the Counties in question. The only time that he will work in other parts of Hallman's territory or Jim Cody's territory is in the manner of a scout when he happens to be instrumental in helping them sell some job in their territory due to the fact that he run onto something in conducting his other sales work, which is the selling of Western silos. 1B will please issue all the sales material to Mr. Arne that is issued to the regular salesmen and advise #37A if this material is not kept up to date in the proper manner. If it is possible to do so, #8 will kindly keep in force insurance that Mr. Arne has carried in the past, deducting the premiums from his commissions earned. GJS 37 bjs*AG Instruction issued to office.''

While the introduction of this exhibit was objected to, and under ordinary conditions might well have been excluded, to have all the material upon which the Industrial Commissioner and the District Court acted, we set it out.

It appears that the deceased, on the day of his unfortunate death, was also engaged in selling the products of the James Manufacturing Company. The record amply shows that neither the Western Silo Company nor the James Manufacturing Company objected to the dual agency and that both of these companies had knowledge of the fact. The fact that Arne was engaged in selling for both companies would not, in itself, prevent him from being an ''employee'' within the meaning of that term as used in the Workmen's Compensation Act, were not other conditions existing at the time of his death which would exclude him. However, the two connections are important in this case for reasons that will be pointed out hereinafter.

There is no reservation in the Arne contract, on the part of the Western Silo Company, to control the methods and means whereby Arne was to procure his orders for the company's products from the customers he solicited in the territory assigned to him or elsewhere. There were rules governing the form in which he was to submit orders, and also, when requested, he was to

effect settlement on such orders, when they had been filled by the company on certain terms; but as to the methods and means whereby he was to procure the orders for goods or effect the settlement in accordance with such terms, as stated, they were left to Arne. He was not, by the terms of the contract, obliged to devote any more time to procuring orders for the company than he wished to devote. He was free to act as to time, free to act as to how he procured the orders. He was not required to deliver the goods to the purchaser, nor was he responsible for such delivery. There was nothing in the contract which prevented him from engaging other persons to procure orders for the goods. He was obliged to furnish his own means of transportation and furnish his own capital for expenses. He may be said to have established his own selling organization and to have provided his own capital, consisting of his time and energy and whatever expense money was required. His remuneration was to be derived from the success of his own energy and time in procuring orders for goods, and when such orders were procured and settlement for the goods called for by such orders was effected, then and then only would he receive his remuneration in the form of a stated commission. Many exhibits were introduced with an aim to prove that by instructions, suggestions and advice, the relationship shown by the terms of the contract was modified to the extent of making Arne an employee of the Western Silo Company. After a careful perusal of all of the exhibits connected with this appeal, we do not find anything which may be construed as modifying the contract in this respect or changing the status of Arne as an independent contractor. Strong efforts have been made by counsel for appellee-appellant, Mrs. Arne, to bring this case within the scope of Mallinger v. Webster City Oil Co., 211 Iowa 847, but a comparison of the duties required under the Western Silo Contract and those required under the Webster City Oil Company contract will instantly distinguish one from the other.

In respect to the relationship between Arne and the James Manufacturing Company, the record does not afford as much concise and precise information as in the Western Silo case. The exhibits introduced by appellee-appellant are numerous, but nowhere is there any convincing matter which would tend to prove that the relationship of master and servant existed. Arne was to

furnish his own time and energy and provide his own capital while procuring orders for the products offered by the James Manufacturing Company. In procuring those orders he was free to use his own means and methods. He was furnished with all assistance in the way of "leads," sales arguments, etc., by the two corporations making the goods he sold, but the furnishing of such assistance was for the success and benefit of the independent business in which he engaged. The two corporations had the choice of several systems by which they could get their goods into the hands of the ultimate consumer. They. could establish their own sales organization in which none but their own employees were included. They could sell their output to jobbers or to wholesalers and the employees of these could finally get the goods in the hands of the consumer. They could contract with independent sales organizations as "middlemen" between the producing companies and the ultimate consumer. In this case both companies, Western Silo Company and the James Manufacturing Company, chose to use the service of independent sales organizations. It does not matter whether such sales organizations consisted of but one man or that there were twenty, or that one such sales organization or that ten such separate organizations were used. It is evident that Arne had engaged in the business of selling goods manufactured by companies, not as an employee or servant, but as an independent contractor. He had contracts *for service* with two such companies. There appears to be nothing in the contracts with these two companies that would prevent him from selling the products of other companies, where such products were not the same kind as the products of the two. For illustration, he could have sold stock foods or remedies, radio apparatus or automobiles, without encroaching on the fields of the two companies. His time was his own to spend as he saw fit. He could solicit orders for one company in the morning and for the other company in the afternoon, or he could switch immediately from soliciting for one line of goods to the other. The companies appear to have given Arne the privilege of selling in certain territory, and it is assumed that he would be protected against competition by other sales agents handling the same goods, if he showed the proper results in his personal solicitations. Both companies were looking towards results, and depended upon

Arne to choose the methods and means whereby such results were produced.

There is no conflict whatever in the testimony of witnesses nor is there any conflict in the documentary evidence in the case. Many cases have been cited by counsel for all of the parties to support their arguments, and it appears that the rule in the Mallinger case is depended upon by the appellee-appellant, Mrs. Arne, to support her case. When the record in that case is compared with the record in the present case and special attention is given to the control of the methods and means, as expressed in the contract in the Mallinger case and the lack of such control in the contract between Arne and the Western Silo Company, then it is seen that there is slight analogy in the two cases.

In view of the foregoing, it is the opinion of this court that the deceased Arne was, at the time of the accident that resulted in his death, engaged in an independent business and was, therefore, an independent contractor as respects the Western Silo Company and the James Manufacturing Company, and that the District Court erred in reversing the finding of the Industrial Commissioner with respect to the Western Silo Company and its insurer. For the same reasons as have been set out, this court sustains the District Court in affirming the Industrial Commissioner's finding that Lee E. Arne was, at the time of his death, not an employee of the James Manufacturing Company but was an independent contractor.

It is therefore ordered that the finding of the District Court of Linn County against the Western Silo Company and its insurer, Employers Mutual Casualty Company, be reversed, and that the action against these parties be dismissed at the cost of the appellee, Leora Arne. It is also determined that the finding of the District Court of Linn County, as respects the James Manufacturing Company and its insurer, Employers Mutual Liability Insurance Company, be sustained, and the cost charged to the appellant, Leora Arne.—Reversed in part. Affirmed in part.

WAGNER, C. J., and FAVILLE, ALBERT and KINDIG, JJ., concur.