EUGENE NIEMANN, by HARRY H. DECAMP, his next friend, Appellant, v. IOWA ELECTRIC COMPANY, Appellee.

No. 42422.

APRIL 3, 1934.

Guy S. Calkins, for appellant.

Harry Wifvat and C. E. Richmann, for appellee.

KINTZINGER, J.—The appellant claims to have lost his right arm on February 19, 1931, as a result of injuries received arising out of and in the course of his employment with the defendant-appellee. He was a young man about twenty years of age, and when injured was engaged in shoveling sawdust from a pit under a three-foot

saw. The sawmill and its entire equipment was the property of appellee.

The sole defense raised is that the claimant, when injured, was in the employ of one De Camp, an independent contractor, and that he was not in the employ of appellee. The only question in this case therefore is whether the claimant was in the employ of appellee or S. A. De Camp, an independent contractor. Appellee claims it entered into the following contract with S. A. De Camp on September 30, 1930:

"Whereas, Party of the First Part is the owner of a sawmill in * * * Redfield, Iowa, and desires to secure the services of Second Party to operate said sawmill:

"It is agreed by and between the parties: First Party *agrees to employ Second Party* and Second Party agrees to accept said employment and to operate said sawmill for and on behalf of First Party. Second Party agrees to furnish all labor necessary for the operation of said sawmill and First Party agrees to pay said Second Party therefor the sum of One Half Cent per board foot of lumber sawed while the same is being operated by Second Party, said payments to be made not later than the tenth day of the month following and should be based on the number of feet sawed during the month.

"The Company will furnish the use of the equipment owned by it *and all power necessary for the operation of said sawmill and* * * * all necessary sawteeth. Said Second Party will furnish all * * * oil, belting, dressing, rags, etc. This agreement shall be for a period of thirty days and thereafter until terminated by either party giving thirty days notice. * * *

"[Signed]
"Iowa Electric Company, First party.
"S. A. DeCamp, Second party."

Appellee contends that under this agreement De Camp became an independent contractor; that as such he was claimant's employer, and appellee is therefore not liable for his injuries. The Board of Arbitration and the Industrial Commissioner both held that appellant was in the employ of appellee and entitled to compensation. Appellee appealed from the award of the commissioner to the district court. The district court reversed the ruling of the commissioner, held that De Camp was an independent contractor, that claim-

ant was his employee, and therefore not entitled to compensation. Appellant contends that the court erred in holding, as a matter of law, that under the evidence De Camp was an independent contractor and that claimant was in his employ. Appellant also contends that under the evidence in relation to the manner of performing the work, after the contract was signed, De Camp never in fact became an independent contractor, and that appellant was at all times an employee of the defendant.

The sawmill in question was operated only intermittently; there was no continuous employment for either Mr. De Camp or the men. When a sufficient number of logs had accumulated, Mr. Mabbitt, the appellee's superintendent, would direct Mr. De Camp to get the men together for the purpose of sawing the logs into boards. This intermittent work lasted only a few days at a time. This was the manner in which the sawmill was run both before and after September, 1930.

The facts show that said De Camp had been employed as a sawyer for the appellee for many years before September, 1930, and that claimant and several other men were in appellee's employ a long time prior to September, 1930, and during all that time they performed the same kind of work they performed thereafter. A man named Anthony Mabbitt was also in appellee's employ as superintendent of the sawmill both before and after September, 1930. The evidence also tends to show that Mabbitt kept the time of the claimant and the other workmen, and had complete charge, control of, and direction of all the men working at the mill, before and after September, 1930; that Mabbitt was in name, as well as in fact, superintendent at the mill, and gave all directions to the men working there; that he at all times notified De Camp when the mill would begin work, and at all times ordered him to have the men go to work; that Mabbitt had control of the mill and gave orders to the employees at the mill, and directed them where to work, when to work, and how to do it; all the employees at the sawmill, including claimant, both before and after September, 1930, assisted in piling lumber, piling slabs, handling logs, shoveling sawdust from a pit under the saw, and such other work as Mabbitt directed; that Mabbitt gave Niemann orders and directions as to his work on the very day he was injured. It also shows that after September, 1930, Mabbitt discharged some of the men and told them and De Camp they could not work there any longer. Such orders were also given before September, 1930. Mabbitt always told De Camp when to get

the men and when to commence work. De Camp never began work until after getting orders from Mabbitt.

There is no evidence in the record tending to show that claimant or any of the other employees at the mill, after September 30, 1930, knew anything about the alleged independent contract or that they were no longer working for the company after that time.

Before that time their pay was 35 cents an hour. They received the same amount thereafter. There is evidence tending to show that Mabbitt kept entire track of the employee's time both before and after September, 1930. De Camp had no voice in fixing their wages either before or after September 30, 1930; he was directed by the company to pay them the same wages they had received before September, 1930. They were paid twice a month both before and after that time. Their pay was received after their time had been sent in by Superintendent Mabbitt. There was also evidence tending to show that De Camp had no more control over the operation of the sawmill after September, 1930, than he had before. Before September, 1930, their pay checks came to the men individually; after that time the pay checks came to De Camp with directions to pay the men 35 cents an hour as before. According to the alleged contract, the men were to be paid once a month, but they continued to receive their pay twice a month as before. Of great significance in this case is the fact that De Camp had no voice whatever in fixing the wages of the men employed at the mill. The company told him to pay them 35 cents an hour. This is the amount they had received before, and this is the amount he was ordered to pay them afterwards.

The contract also provides that De Camp was to furnish all oil, dressing, belting, rags, etc. But these materials were all furnished by the company after September, 1930, the same as before. The evidence tends to show that the only part of this contract ever given any effect was that relating to De Camp's pay. Before September, 1930, he was receiving 50 cents per hour. What he received thereafter amounted to only 28 cents. He complained of the reduction and was advised that he would receive 50 cents as before.

De Camp was not engaged in any particular business; that he had no means of his own in carrying out the contract; that up to September, 1930, he had always been an ordinary day laborer receiving 50 cents an hour. After September, 1930, his status did not in fact change; he still remained an ordinary day laborer, doing

the same kind of work he did before, with no change in his relationship to his employer, with reference to the control or direction of the employees at the mill; he did not furnish his own assistants and was himself at all times subject to the orders of Mabbitt, the superintendent.

The logs brought to the mill belonged to various owners, and were turned over to the Superintendent Mabbitt, who kept track of those brought in and the lumber sawed therefrom and had it placed on piles by the men. No one ever delivered the logs to De Camp, and he knew nothing about the ownership thereof, or the lumber cut therefrom. Any complaints made about the logs or lumber were made to Mabbitt and never to De Camp.

The rule seems to be well settled in this state that if a person is in fact an employee of an independent contractor, he cannot recover. Likewise the rule is well settled that although a contract be entered into for the doing of certain work, it does not necessarily make the contractee an independent contractor.

In Mallinger v. Webster City Oil Company, 211 Iowa 847, loc. cit. 851, 234 N. W. 254, 256, in defining the term "independent contractor" we said:

"An independent contractor under the quite universal rule may be defined as 'one who carries on an independent business and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results.' The commonly recognized tests of such a relationship are, although not necessarily concurrent or each in itself controlling: (1) The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer. If the workman is using the tools or equipment of the employer, it is understood and generally held that the one using them, especially if they are of substantial value, is a servant."

In Arne v. Western Silo Co., 214 Iowa 511, 242 N. W. 539, we said:

"An independent contractor within the generally accepted legal definition of the term is: A person who, in the pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such person in respect to all of its details. An independent contractor represents the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. Mallory v. La Pure Ice & Supply Co., 320 Mo. 95, 6 S. W. (2d) 617; Moody v. Industrial Acc. Commission, 204 Cal. 668, 269 P. 542, 60 A. L. R., 299; Arthur v. Marble Rock Consol. School Dist., 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718. An independent contractor is defined as 'one who contracts to do a specific piece of work furnishing his own assistants, and executes the work entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work.' 26 Cyc. 970. * * * If the employer has control of what is to be done, * * * as well as the material details as to how the work is to be done, then clearly the laborer is an employee or servant of his employer."

The authorities generally hold that notwithstanding a written contract, if the master retains control and direction of the men, with the right of fixing their pay and the right of discharging whom he pleases, with power of control over the employees, the relationship of independent contractor is not created, and the acts and conduct of the parties will govern their relationship. Franks v. Carpenter, 192 Iowa 1398, 186 N. W. 647; Root v. Shadbolt & Middleton, 195 Iowa 1225, 193 N. W. 634; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N. W. 254; Hansen v. Rainbow Mining & Mill Co., 52 Idaho 543, 17 P. (2d) 335; State ex rel. Virginia & Rainy Lake Co. v. District Court of St. Louis County, 128 Minn. 43, 150 N. W. 211; Dominic v. Faucett, 245 Mich. 337, 222 N. W. 758.

In Franks v. Carpenter, 192 Iowa 1398, loc. cit. 1401, 186 N. W. 647, 648, we said:

"Carpenter, at the time Hudson was employed by him, knew that Hudson understood the work of constructing sewers and would be a good man to place in charge of the work at Conroy. Nothing was said between Carpenter and Hudson as to the manner of doing the work, nor is there anything in the contract or arrangement be-

tween them, or the manner in which it was carried out, to indicate that Carpenter in any respect waived his right to control or direct the time or manner of making the excavation and laying the drain. There was no occasion for any specific reservation of this right. It is true that Carpenter was not present at any time during the progress of the work, but, manifestly, he had the right to discharge Hudson, Franks, or any other employee on the job and to absolutely direct Hudson in everything he did in the work of putting in the drain. * * * He kept the time of himself and the other men, delivered it to Carpenter, who gave or sent him a check for the amount shown thereby to be due the men. * * * Significance is also given by counsel for appellants to the fact that Hudson and the men employed with him determined how the work should be done, the number of hours they would work each day, at what time they would begin, and at what time they should quit and what time they would take at noon for lunch. These were all matters within the control of Hudson as foreman. There was nothing in the contract between Hudson and Carpenter to prevent the latter from fixing the time for the men to commence work and the number of hours they should work each day. He simply refrained from doing so and left it all to the discretion of Hudson. This did not make him an independent contractor."

In Root v. Shadbolt & Middleton, 195 Iowa 1225, loc. cit. 1232, 193 N. W. 634, 637, we said:

"Claimant was entitled to show the actual relations, contractual and otherwise, between Middleton and Twigg; that it was competent to show such relationship by the conduct of the parties, and what they said and what they did in the premises; the manner in which they dealt with the operations that were being carried on under the contract between them." There was evidence in the record in this case tending to show that the parties to the contract did not regard it as one under which the employees of the mill were to be considered employees of an independent contractor.

If there was any evidence in this case tending to show, from the relationship of the parties and the manner under which the work was performed, that De Camp was not an independent contractor, such evidence would raise a question of fact for the determination of the Industrial Commissioner, and his findings based

upon such facts are binding and not reviewable. Likewise if there was any such evidence tending to show that the relationship between appellant and appellee was that of employer and employee, then the determination of such question became one of fact for the commissioner, and his finding thereon is final and cannot be disturbed by this court. Franks v. Carpenter, 192 Iowa 1398, 186 N. W. 647; Mallinger v. Webster City Oil Company, 211 Iowa 847, 234 N. W. 254; Rish v. Iowa Portland Cement Co., 186 Iowa 443, loc. cit. 453, 170 N. W. 532.

There was evidence in this case tending to show that De Camp did not even have power to control or direct the men; that he did not have even the rights of a foreman; that the full control and direction of the manner in doing the work reposed in Mr. Mabbitt, appellee's superintendent; that Mabbitt gave the orders to and directed all the men at all times, both before and after 1930, as to when and how the work was to be done; that he directed De Camp when the work was to be done or ordered him to get the men. This was done in the same manner after 1930 as before; that Mabbitt had the power to and did discharge some of the mill employees; that the alleged contract did not contemplate the performance of any other work by De Camp except running the saw as before. The company furnished the entire equipment and supplies with which to do the work; De Camp was over 70 years of age and the only work performed by him was that of operating the saw. It is also significant to note the following statement contained in the contract: "Whereas, Party of the First Part * * * *desires to secure the services* of Second Party to operate said sawmill; It is agreed * * * First Party *agrees to employ Second Party* and Second Party *agrees to accept said employment* and to operate said sawmill for and on behalf of First Party." (Italics ours.) This part of the agreement tends to show that it was entered into as a contract of employment and not as a contract for the performance of any certain piece of work, and should be given consideration with all the other evidence offered in relation to the performance of the work under the contract, in determining whether or not De Camp was in fact an independent contractor.

There was sufficient evidence from which the commissioner could find that the work of the men was ordered and directed by Mabbitt, the superintendent. De Camp had been employed at the mill as sawyer for many years. He secured the men to do the work after

signing the contract the same as before. The force of men and the work moved along in the same way.

There is a clear distinction between the cases cited by appellee supporting their contention that De Camp was an independent contractor, and the case at bar. In practically all of the cases cited, the entire control and supervision of the work, in all of its details, was given to the contractee. There is evidence in this case, however, tending to show the contrary. It was competent for the plaintiff to show that, as a matter of fact, the parties had put a different construction upon the contract by their conduct, and that defendant had in fact exercised supervision and control over the work, in its details, inconsistent with the presumed character of an independent contractor. In Humpton v. Unterkircher, 97 Iowa 509, 66 N. W. 776, we said:

"Many rules have been laid down for the determination of the question as to who are independent contractors. But the best definition we have been able to find is that given in Powell v. Construction Company, 88 Tenn. 692, 13 S. W. 691: 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of his work.' "

The arbitration committee before whom this case was submitted and the industrial commissioner before whom it was reviewed, both found from the evidence that Eugene Niemann, the claimant, was in the employ of the Iowa Electric Company at the time he received his injuries. We are constrained to hold that the evidence offered raised a question of fact for the determination of the commissioner. It is therefore our conclusion that it cannot be said, as a matter of law, that De Camp was an independent contractor. There was sufficient evidence in the record to sustain such finding by the commissioner. His findings under the facts are binding upon this court and must be sustained.

For these reasons the judgment of the lower court is hereby reversed, and the case is remanded for the entry of a judgment in harmony herewith.—Reversed and remanded.

CLAUSSEN, C. J., and STEVENS, MITCHELL, ANDERSON, and KINDIG, JJ., concur.