In the Matter of the Hearing of ELECTROLUX CORPORATION, Employer, under Section 523 of the Unemployment Insurance Law.

ELECTROLUX CORPORATION, Appellant; FRIEDA S. MILLER, Industrial Commissioner of the State of New York, Respondent.

Third Department, November 12, 1941.

Chadbourne, Hunt, Jaeckel & Brown [Harold L. Smith, William K. Dupre, Richard W. Hogue, Jr., and A. Ross Jones of counsel], for the appellant.

John J. Bennett, Jr., Attorney-General; Henry Epstein, Solicitor General [W. Gerard Ryan and Francis R. Curran, Assistant Attorneys-General, of counsel], for the respondent.

HEFFERNAN, J. Electrolux Corporation has appealed from a decision of the Unemployment Insurance Appeal Board affirming a decision by a referee in a proceeding under article 18 of the Labor Law holding that certain persons selling appellant's products are its employees and not independent contractors and that it is liable for contributions based upon their earnings.

This is the second appearance of this cause in our court. On the former hearing the decision below was reversed by this court by a divided vote and the proceeding dismissed on the ground that it did not properly arise under the Unemployment Insurance Law (261 App. Div. 487). The Court of Appeals, however, reversed our determination and remitted the matter to us for a decision on the merits (286 N. Y. 390).

The sole question before us on this appeal is whether as a matter of law appellant's salesmen are employees or independent contractors.

Appellant, a Delaware corporation, is engaged throughout the United States in the manufacture and sale of an electric vacuum cleaner. It maintains several branch offices in this State, each of which is under the supervision of a branch manager. Its product is sold in this State principally through approximately 850 persons called " sales representatives," who operate under a standard form of written agreement with appellant called the " sales representative's agreement."

Prior to July 1, 1938, the business now conducted by appellant in this State had been conducted by Electrolux, Inc., a subsidiary of appellant. On June 30, 1938, appellant caused the subsidiary to be dissolved and took over its business together with the personnel thereof and continued to market the product itself. Electro-

lux, Inc., had also sold its products through salesmen under a standard form which, it is claimed, is materially different from that involved here. The subsidiary corporation concededly was subject to the Unemployment Insurance Law and paid contributions into the unemployment insurance fund based on the earnings of its salesmen. When appellant took over the business the subsidiary's salesman's agreements were canceled and " sales representative's agreements " were made with such of the former salesmen as desired to sign them.

Appellant frankly concedes that the new agreement was made for the purpose of giving the salesmen the status of independent contractors and not that of employees. In view of that concession the duty is incumbent on us to analyze the contract between appellant and its salesmen and to scrutinize its provisions with unusual care in order to determine whether on the facts in this record the salesmen are independent contractors or whether the language used in the instrument is merely a subterfuge to evade the provisions of the statute and hence a guise for an actual service relationship. While in some instances the guise may have defied judicial penetration, as a general rule the courts have seen through the mask and have recognized the real relationship.

As the financial burdens imposed upon the operator of a business venture become heavier and heavier we recognize that there is a temptation to avoid them by fashioning employer-employee relationship by legal devices into other categories. For doing so the taxpayer is not to be condemned.

The United States Circuit Court of Appeals in the case of *Marshall* v. *Commissioner of Internal Revenue* (57 F. [2d] 633) used this language: " There was nothing unlawful or even mildly unethical " in the attempt of a taxpayer " to avoid some portion of the burden of taxation " which fell on him.

In *Gregory* v. *Helvering* (293 U. S. 465) the Supreme Court of the United States in the course of its opinion said:

" * * * that the motive of the taxpayer thereby to escape payment of a tax will not alter the result or make unlawful what the statute allows. * * *

" The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."

The work contracted for in the agreement before us is the making of sales. In that agreement appellant stipulates on its part to use its best efforts in supplying its products to fill orders obtained by its representatives and to pay the representatives commissions on sales of cleaners in amounts specified in the agreement.

The principal covenants of a salesman are to take all orders for appellant's products on the printed contract form supplied by appellant; to make all credit sales only subject to approval by appellant; to maintain the sales price stated in the printed contract form; to turn over to appellant all money and trade-in cleaners; not to sell or deal in other vacuum cleaners; not to make any representation, warranty or guaranty with respect to appellant's products; not to pledge the credit of appellant or make any contract or assume any obligation of any kind on its behalf; to pay all of his own expenses and all other obligations and liabilities incurred or assumed by him " in connection with the conduct of his business and his performance of this agreement " and indemnify appellant against any claims asserted against it " by reason of the conduct of his business; " to establish credit or make a deposit with appellant as security for products delivered to him, for payment of any claims of appellant against him and for faithful performance of his agreement; and to keep deposited with appellant a surety bond conditioned upon the faithful performance of his agreement.

Sales representatives receive no salary; they are not on appellant's payroll; they cannot draw money in excess of earned commissions; they use their own automobiles at their own expense; and appellant does not furnish them with office or desk space, business cards or literature for customers.

Appellant does not require its representatives to work any specific number of hours or days; or to follow any fixed itineraries; or to call on or sell to any designated persons; or to maintain any specific volume of sales; or to make collections or adjustments; or to keep records of business transacted; or to make any reports; or to service or repair vacuum cleaners.

Sales representatives are not required to follow any particular selling methods nor does appellant maintain any organization for exercising control over the manner in which they do their work, nor does it issue any rules or regulations governing their conduct in the performance of their duties.

The branch managers represent appellant in such dealings as it has with its sales representatives but their principal functions in this connection are to make the sales representative's agreements, acquaint new salesmen with the operation, uses and merits of the vacuum cleaner and give such representatives advice on sales problems when such advice is sought. Their agreements with appellant contain the following prohibition against assumption of any control over the activities of sales representatives:

" 8. As provided in the Representative's Agreement, any instructions which you give to Representatives shall be in an advisory

capacity only, and you are not to assume any direction or control over the Representative which will change or appear to change the relationship between the Company and the Representative established by said Agreement."

Although it is apparent from an examination of cases involving the independent contractor relationship that there is no absolute rule for determining whether one is an independent contractor or an employee, and that each case must be determined on its own facts, nevertheless, there are many well-recognized and fairly typical indicia of the status of an independent contractor, even though the presence of one or more of such indicia in a case is not necessarily conclusive. It has been held that the test of what constitutes independent service lies in the control exercised, the decisive question being as to who has the right to direct what shall be done, and when and how it shall be done. Practically every contract for work to be done reserves to the employer a certain degree of control, to the end that he may see that the contract is performed according to specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for a relation of master and servant is not inferable from a reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative, so long as he does it in accordance with the contract. The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work as well as of the result; an independent contractor relationship exists where the person doing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Accordingly, where an employer may prescribe what shall be done, but not how it shall be done or who shall do it, the person employed is an independent contractor. (*Hexamer* v. *Webb*, 101 N. Y. 377; *Uppington* v. *City of New York*, 165 id. 222; *Matter of Beach* v. *Velzy*, 238 id. 100; *Brown* v. *Hotels Statler Company, Inc.*, 260 App. Div. 972; *Matter of Miller*, 262 id. 385; 27 Am. Jur., Independent Contractors, §§ 2, 3, 5, 7; 31 C. J. 473.)

Indeed, in the final analysis it is the question of control which is of supreme importance in determining the existing status. Here the written agreement expressly excludes any right of control by appellant and defines the status between it and its salesmen as an independent contractor relationship. Of equal significance is the statement printed on the weekly settlement records, a copy of which is given to each salesman weekly when his commissions are paid, which reads: " * * * Absence of deductions for

Federal Old Age Contributions and State Unemployment Contributions is based on Federal and State rulings that Sales Representatives, Team Captains and Group Leaders are independent contractors and are not employees of Electrolux Corporation."

Moreover, the agreement contains a declaration by the contracting parties " that there are no oral or other agreements or understandings between them than herein contained."

Respondent asserts that the agreement does not disclose the true relationship between the parties. The only testimony in the record is that given by appellant's officers and salesmen. That testimony conclusively negatives the existence of an employer-employee relationship. It likewise demonstrates that appellant's practice in dealing with its salesmen is entirely consistent with the provisions of the contract between them. Certainly, there is no substantial evidence that appellant exercised any additional control over its salesmen.

On the proof before us we are required to hold that the plain intention of the agreement to create an independent contractor relationship must be given effect. The inconclusive assertions of the Board cannot transmute this document into something else. The Board while reluctantly conceding that the testimony of appellant's witnesses is uncontradicted, nevertheless, disingenuously attempts to destroy the effect of its own concession by the following statement: " It may be well to point out that although the testimony of appellant's witnesses was uncontradicted, nevertheless the referee was not so helpless that he was required to believe anything and everything said by such witnesses, palpably under appellant's influence."

There is nothing in the record to justify the Board's insinuation that witnesses were " palpably under appellant's influence." Certainly, the salesmen who testified cannot be said to be interested in appellant's success for appellant's success would establish their ineligibility for benefits under the Unemployment Insurance Law. The Board has no right to ignore the uncontradicted evidence before it.

When we apply the rules of law in the cases cited to the facts in this record, the conclusion is inescapable that appellant's salesmen as a matter of law are not employees but independent contractors. (*Matter of Levine* v. *Aluminum Cooking Utensil Co., Inc.*, 258 App. Div. 1023; affd., 283 N. Y. 577; *Matter of Binder* v. *Parents' Institute, Inc.*, 259 App. Div. 1103; *Matter of Fidel Association of New York, Inc.*, Id. 486; *Matter of Alford* v. *Aluminum Cooking Utensil Co.*, 260 id. 826; affd., 286 N. Y. 651; *Matter of NuBone Company, Inc.*, 260 App. Div. 973.)

Persuasive reasons for our conclusion are, also, found in the decisions of the courts of two sister States. The Superior Court of Connecticut (*Electrolux Corporation* v. *Danaher*, not reported) and the Supreme Court of Appeals of Virginia (*Griffith* v. *Electrolux Corp.*, 176 Va. 378; 11 S. E. [2d] 644) have held that appellant's salesmen are independent contractors.

To sustain the decision of the Board respondent is relying principally on *Matter of Morton* (284 N. Y. 167). The *Morton* case has so many distinguishing features that it is valuless as a precedent in our case. It can be factually differentiated in its details from the case at bar. In the *Morton* case it appeared that claimant was engaged by the respondent, pursuant to a written contract granting to her an exclusive sales territory for its corsets together with the benefit of a course of training in fitting and salesmanship, in return for which claimant agreed, among other things, to take the training, practice the methods taught, keep on hand a complete set of modeling garments, together with an assortment of demonstration models, to furnish the respondent with the names and addresses of all clients and to sell no goods during the term of the contract except those of the respondent. In addition, it was found, upon sufficient evidence, that, as a matter of practice, claimant was required to submit weekly report cards showing in detail the work performed by her each day, to work at least thirty hours each week, to begin work each day at a stated time, to follow a prescribed routine, and to sell at prices suggested by the respondent.

The Court of Appeals, in an opinion by Judge FINCH, held that there was evidence to sustain the finding of the Board and that its decision that claimant was an employee should be upheld. Such provisions in the *Morton* case were construed by the Court of Appeals as expressly giving the company the right to control the manner in which the saleswoman did her work. This is shown by the following excerpts from the opinion of Judge FINCH:

" By the terms of the contract, claimant was obligated to pursue respondent's methods of corsetry and of salesmanship. Necessarily it was not claimant, but respondent, which determined its methods of corsetry and its technique of salesmanship and, hence, it was respondent which directed the manner in which the work was to be done. Thus, the very written agreement, upon which so much stress is placed by respondent, precluded the use of claimant's discretion as to the means employed to achieve the agreed result. The failure of claimant to follow respondent's methods would have been a breach of contract on her part. * * *

" But even if the inquiry had been limited as contended by respondent, the determination of the Appeal Board still would

be warranted, for it was by the very terms of the written contract that respondent reserved to itself, and subjected claimant to, control over the execution of the work. The written agreement expressly provided that claimant was to practice the company's methods of corsetry and salesmanship and, therefore, respondent company had control over the *means* used by claimant in the discharge of her obligation."

Certainly no such construction or effect can be given to the provisions of the agreement involved in this case which directly relate to the right to control the manner in which the work is done, for such provisions, far from giving such control to appellant, expressly reserve it to the sales representative. They expressly reserve to the sales representative the right to reject " suggestions as to methods of handling and selling Electrolux products " and the right " to conduct his business and devote such time thereto as he deems advisable and conducive to the best results."

It is noteworthy that the essential elements of control present in the *Morton* case are conspicuously absent in the record before us.

Respondent places considerable emphasis on the rule laid down by the Court of Appeals in *Matter of Stork Restaurant, Inc.*, v. *Boland* (282 N. Y. 256), to the effect that decisions of administrative tribunals upon questions of fact are conclusive upon the courts. The answer to that argument is that the rule is inapplicable to the case at bar. Here there is no conflict in the testimony, no issue of credibility, no occasion to weigh evidence and choose between conflicting inferences.

In defining the quantum of evidence necessary to support a decision of the Appeal Board the court in the *Stork Restaurant* case said: " A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires ' such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' (*Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, 229.) The same test is applied in trials before a court and jury. Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by the administrative board. (Cf. *National Labor Relations Board* v. *Columbian E. & S. Co.*, 306 U. S. 292.) "

Thus, to support the decision of the Appeal Board it would be necessary to find in the record substantial evidence that appellant has a right to control the manner in which a salesman does his work. The record will be searched in vain for such proof.

In arriving at the conclusion which it did the Appeal Board relied entirely on its findings to the effect that appellant fixed the prices and terms upon which its product could be sold, supplied its salesmen with order blanks, price lists and literature, placed them under the jurisdiction of either a team captain or a group leader, made suggestions to them regarding the performance of their duties, required them to submit to a course of training, arranged meetings which they might attend and reserved the right to terminate its agreement with them under certain conditions.

Because of the importance of this case we feel in duty bound to analyze briefly each of these findings. Since the work contracted for is the making of sales, control by appellant of the price and terms of sale merely involves control of the results contracted for as distinguished from control over the manner in which the work is done. Similar control existed in the cases which we have cited in which salesmen were held to be independent contractors.

The order blanks and price lists with which appellant supplied its representatives relate only to the terms of sale, control of which involves control of the results only. Like material was also furnished the salesmen who were held to be independent contractors in the cases heretofore cited.

The proof shows that appellant furnished its representatives with no literature for distribution to customers except the User's Manual packed with each cleaner when sold.

The statement of the Board that salesmen are under the jurisdiction of either a team captain or group leader finds no support in the evidence. On the contrary, the proof shows that the principal function of branch managers with respect to the salesmen is to make the sales representative's agreements, acquaint salesmen with the vacuum cleaner and give them advice on sales problems when requested. In fact branch managers are expressly prohibited by their agreements as we have already shown from assuming any control over the salesmen. What is done by branch managers, team captains and group leaders cannot be regarded as evidence of a right to control the manner in which a salesman does his work.

The finding of the Board that appellant issues to its salesmen literature containing "so-called suggestions" which consist of "a detailed and comprehensive set of instructions regulating the performance and conduct of its salesmen" is likewise without support in the evidence. As we have already shown, these are not instructions but merely suggestions which the salesmen are not required to follow.

The mere making of suggestions as to the methods of work to be pursued will not establish the relationship of master and servant,

even though the suggestions be as to details or as to the co-operation necessary to bring about the larger general result. (*Matter of NuBone Company, Inc., supra; Arne v. Western Silo Co.,* 214 Iowa, 511; 242 N. W. 539; *Barnes v. Indian Refining Co.,* 280 Ky. 811; 134 S. W. [2d] 620; *Henry Haertel Service, Inc., v. Industrial Comm.,* 211 Wis. 455; 248 N. W. 430; *Barton v. Studebaker Corp. of America,* 46 Cal. App. 707; 189 P. 1025; *Badger Furniture Co. v. Industrial Comm.,* 200 Wis. 127; 227 N. W. 288; *Johnston v. Smith,* 123 Neb. 716; 243 N. W. 894.)

The finding that a salesman is required to submit to a course of training to acquaint him with his duties as to the cleaner and to " enable him to reassemble the contraption after it arrives from the factory dismantled " is also unsupported by any proof. There is no evidence that any training is required or that the cleaner is received from the factory dismantled. Neither is there any evidence that salesmen are given any directions as to the manner in which sales are to be made.

Meetings are held at branch offices so that salesmen may if they desire ask advice regarding sales problems. Attendance is entirely voluntary at such meetings.

The finding of the Board that appellant could discharge a salesman " at any time " for disregarding instructions as to the manner of making sales is also without evidence to support it. The power of dismissal is not absolute, the sales representative's agreement provides for termination by appellant without notice only in specified cases such as misrepresentations and other acts of misconduct which have no relation to the manner of making sales. The agreement also provides that it may be terminated by either party without cause on thirty days' notice.

There are many cases in which salesmen have been held to be independent contractors despite the fact that their agreements were terminable on thirty days' or less notice or even without any notice. (*Matter of Fidel Association of New York, Inc., supra* [thirty days' notice]; *Matter of Binder v. Parents' Institute, Inc., supra* [without notice]; *Arne v. Western Silo Co., supra* [without notice]; *Grocers Biscuit Co. v. Hinton,* 264 Ky. 739; 95 S. W. [2d] 571 [without notice]; *Peters v. California Building-Loan Assn.,* 116 Cal. App. 143; 2 P. [2d] 439 [without notice]; *Plost v. Avondale Motor Car Co.,* 55 Ohio App. 22; 8 N. E. [2d] 441 [without notice]; *Royal Indemnity Co. v. Industrial Accident Commission,* 104 Cal. App. 290; 285 P. 912 [without notice]; *American Savings Life Ins. Co. v. Riplinger,* 249 Ky. 8; 60 S. W. [2d] 115 [without notice]; *Indian Refining Co. v. Dallman,* 31 F. Supp. 455 [five days' notice]; *Texas Co. v. Higgins,* 32 id. 428 [five days' notice].)

The suggestion is also made that this case is distinguishable from *Matter of Levine* (*supra*) on the theory that the salesman in the *Levine* case was bonded, that he used his own discretion and was " out of control " of the company while demonstrating his cooking utensils by cooking " sample dinners " for prospective purchasers, whereas the sales of appellant's representatives are subject to " verification." Here, too, appellant's representative is also bonded; he, also, uses his own discretion and is " out of control " of the company while demonstrating his vacuum cleaner. The " verification " of sales has no relation whatever to the manner in which the salesman does his work. Its primary purpose as an examination of the form of verifier's reports discloses is to verify the existence of a *bona fide* contract of sale between appellant and the customer at the prescribed price. In other words, it relates merely to the results of the work.

The Appeal Board has devoted considerable time in discussing the provisions of the contract which existed between appellant's former subsidiary, Electrolux, Inc., and its salesmen. We need not concern ourselves with that contract. It is an entirely different agreement made by another corporation and is wholly irrelevant to the issue before us. Clearly the contract before us is a contract for results which does not give appellant the power to control the method or manner of obtaining those results.

The decision appealed from should be reversed and the proceeding dismissed, with costs to appellant against the Industrial Commissioner.

HILL, P. J., and CRAPSER, J., concur; BLISS, J., dissents; SCHENCK, J., dissents, in an opinion.

SCHENCK, J. (dissenting). I dissent from Mr. Justice HEFFERNAN's learned and well-argued opinion. When this matter was before us on a previous occasion I voted to decide the case upon the merits and, in so doing, to affirm the decision of the Unemployment Insurance Appeal Board. At that time, however, the majority of this court determined the matter upon purely jurisdictional ground. Now that the Court of Appeals has remitted the case to us for a decision on the merits, it is incumbent upon me to either stand upon the ground on which I wrote the dissenting opinion in *Matter of Electrolux Corporation* (261 App. Div. 487), or else to reverse the position taken by me in that case. I have determined upon the former course in the belief that the position there taken was founded upon judicial decision.

It is true that a taxpayer may take advantage of all means permitted by law to reduce the amount of taxes to be paid. It is

not sufficient, however, for the taxpayer by mere forms to characterize itself as being in a tax exempt category. In the instant case, the appellant's predecessor, Electrolux, Inc., was concededly subject to the Unemployment Insurance Law. As I stated in the earlier case, I do not believe that the contracts drawn for the salesmen under the new set-up and the changed formalities in their methods of making sales transformed these salesmen into independent contractors.

In this connection, and also in connection with several of the other points so carefully discussed by Mr. Justice HEFFERNAN, I herewith quote part of my opinion in the earlier case, the statements therein contained being a comparatively brief outline of my present position.

" The merits of the case devolve upon a question of fact. Are appellant's salesmen employees or are they independent contractors? There is no question but that prior to July 1, 1938, appellant operated in New York State through a subsidiary, Electrolux, Inc., which was concededly subject to the Unemployment Insurance Law. This corporation was dissolved and appellant obtained permission to do business in New York State with virtually the same personnel as had been employed by the subsidiary. New contracts were drawn for the salesmen following this change. These contracts were designed apparently to characterize the salesmen as independent contractors. The new plan seems beyond doubt to have been for the express purpose of avoiding compliance with the law in question.

" The difficulty with appellant's system, however, seems to be in the fact, as found by the Industrial Board, that appellant still exercises such a degree of control as to continue the salesmen as employees in fact rather than to make them independent contractors. The criterion is not what the salesmen are called but what they actually are. (*Matter of Morton*, 284 N. Y. 167.) Numerous cases have been cited by appellant to establish that these salesmen are independent contractors. Each case upon this point, however, must necessarily be decided upon its own peculiar state of facts, no two of which, as in the case of wills, are ever precisely alike. It is the function of the administrative authority to determine the facts presented in each case and ' where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the Board.' (*Matter of Stork Restaurant, Inc.*, v. *Boland*, 282 N. Y. 256, 267.)

" In the instant case the salesmen can sell only at a fixed price, can take orders only upon appellant's special blanks, must have all orders subject to inspection by a so-called ' verifier ' employed

by appellant, and are paid commissions weekly. In addition, they are furnished with advertising matter, restricted to certain fixed territories, and given more or less uniform sales instructions. These and other points, such as the ' team ' system, indicate definitely that appellant's salesmen are not independent contractors in the true sense of the word.

" In this connection the case at bar is distinguished from *Levine* v. *Aluminum Cooking Utensil Co. Inc.* (258 App. Div. 1023; affd., 283 N. Y. 577). In that case the salesman was bonded, indicating a personal responsibility upon him that does not exist here. Furthermore, his sales were apparently not subject to the ' verification ' used in the instant case, which clearly shows that Electrolux Corporation maintained control of all sales in the final analysis. In addition, the Aluminum salesman had a sort of culinary skill which he used in preparing ' sample dinners ' for prospective purchasers, an element which placed discretion in the salesman and which put him, while engaged in such activity at least, out of the control of the Aluminum Company. In view of these and other factual distinctions, which in similar manner distinguish the instant case from others urged by appellant, I think the decision should be affirmed."

The decision appealed from should be affirmed.

Decision reversed and proceeding dismissed, with costs to appellant against the Industrial Commissioner.