E. W. JONES, Administrator, Appellant, v. H. E. LOZIER, Appellee.

**MASTER AND SERVANT:** Injuries to Third Persons—Partial Departure From Scope of Employment. Principle reaffirmed that a master may be liable for the negligence of a servant who, at the time in question, is *partly* within and *partly* outside the scope of his employment.

**TRIAL:** Instructions—General Statement of Issues. An instruction to the effect that the plaintiff was required to prove an injury "at

or about the time and place and in the manner substantially as alleged in the petition'' does not impliedly require the plaintiff to prove *every one* of several assignments of negligence.

**WITNESSES: Examination—Undue Limitation on Cross-Examination.**
3  The court has no discretion to refuse to permit a witness to be cross-examined within reasonable range on a vital and controlling issue concerning which he has testified on direct, and the error is all the more glaring when the witness is an interested one, and is practically the only person who has first-hand knowledge of the occurrence in question.

**MASTER AND SERVANT: Injuries to Third Persons—Deviation From**
4  **Instructions.**  Principle recognized that a servant who is acting within the scope of his employment and in furtherance of the business intrusted to him by his master may not lawfully commit his work to a stranger and thereby absolve himself *or his master* from the consequences which may result.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

DECEMBER 15, 1922.

ACTION at law, to recover damages on account of the injury and death of Eliza Coleman. Trial to a jury. Verdict and judgment for defendant. Plaintiff appeals.—*Reversed.*

*U. M. Reed* and *John L. Gillespie,* for appellant.

*Stipp, Perry, Bannister & Starzinger* and *C. S. Missildine,* for appellee.

WEAVER, J.—The defendant is a florist, doing business in the city of Des Moines. At the time in question, he employed in his business a truck or motor car in making delivery of flowers and other goods to customers in various parts of the city, such truck being operated by an employee, Ray Beggan. On March 2 1921, Beggan was directed to drive the truck and make . one or more deliveries to certain customers. At some point on the trip, Beggan took into the car with him a young lady, Pearl Calvert, whom he permitted to do the driving. While so driving, Miss Calvert seems to have lost control of the car,

which turned from the roadway upon or across the sidewalk, where it struck and fatally injured plaintiff's intestate, Mrs. Coleman. On the theory that such injury was caused by the negligence of Beggan while engaged in the defendant's service, this action was brought to recover damages. The defendant's answer is, in effect, a general denial. The theory of the defense is that Beggan, having been sent out by defendant to make certain deliveries, had, in fact, performed that duty, but that, instead of returning to defendant's store, as he should have done, he drove or permitted the young lady to drive the truck to another part of the city, for the purpose of leaving his passenger at her home; that such divergence or departure from the duty of his employment was without the knowledge or authority of the defendant; and that for an accident or injury resulting from such unauthorized act, defendant is in no manner liable. It is not seriously contended for the appellant that defendant can be held liable in this action if Beggan had departed from the line of his duty to his employer, and was using the car for his own pleasure or the pleasure or convenience of his lady companion. The best which can be said for plaintiff's case upon this phase of the controversy is that such question of fact was for the jury, and that the verdict for defendant, so far as it involves that fact, is not without substantial support in the record. To justify this court in disturbing the verdict, prejudicial error must be shown in some of the rulings below of which complaint is made.

I. Error is assigned upon certain instructions given by the court to the jury. It is said that the jury was told, in effect, that if, at the time of the accident, Beggan was using the car in part for his own use or pleasure, then his negligence in doing it could not be imputed to the defendant. Counsel say that this is erroneous because it is the true rule that, if the driver was using the car both for his own pleasure and also in furtherance of the master's business, the latter is still liable for the driver's negligence. If the instructions challenged are open to the criticism so made, the exception would have to be sustained; but we think that such is not the fair import of the

1. MASTER AND SERVANT: injuries to third persons: partial departure from scope of employment.

language. Paragraph 3 of the charge, to which the objection is specifically directed, is upon the burden of proof in the case, and informs the jury that among other things which plaintiff must establish is:

"That the said Ray Beggan at the time of the accident in question was the agent of defendant H. E. Lozier, and was at the time acting in the scope of his employment for the use and benefit of the defendant, and was at the time of the accident engaged in the business of defendant, and not for his own use, purpose, benefit, enjoyment, or pleasure."

This language was, in substance, repeated in other paragraphs of the charge. No request for more explicit instruction upon this point was made. The instruction as given does not tell the jury that defendant would not be liable if Beggan was using the car *in part* for his own purposes, nor do we think that such is the necessary or natural construction which the ordinary reader would place upon it. The most which can be said in criticising it adversely is that it may give rise to doubt in a juror's mind upon the point suggested by counsel. In the absence of any request for further instruction thereon, we hold that the charge as given is not erroneous.

II. In the same instruction, the jury were told that plaintiff was required to prove that Mrs. Coleman was killed "at or about the time and place and in the manner substantially as

2. TRIAL: instruc-
tions: general
statement of
issues.

alleged in the petition." From this it is argued that, as the petition charges six different specifications of negligence, the effect of this instruction was to require plaintiff to establish each and all of such specifications, in order to recover damages. Such is clearly not the intent or effect of the quoted language. It has no reference to the inquiry whether the death was caused by negligence, but to the "time, place, and manner" of the death of plaintiff's intestate. This is made perfectly plain by the further statement in the same paragraph that, to entitle plaintiff to recover, he must show that "defendant was negligent *in one or more* of the particulars charged."

III. Complaint is made that the court unduly limited the cross-examination of Ray Beggan, the principal witness for de-

fendant.  To get the full force and point of this objection, it

is proper here to state that, while the general

**3. WITNESSES:** verdict was for the defendant, the jury returned
examination:
undue limitation
on cross-exam- two special findings:   (1)   That the jury finds
ination.

from the evidence that the automobile truck
was being used within the scope of the defendant's employment;
and (2) that at the time of said accident the automobile truck
was being used in furtherance of defendant's business.  It may
also be added that in one of the instructions the court told the
jury:

"If you fail to find from a preponderance of the evidence
that the said Ray Beggan was operating said auto truck, or
that it was under his supervision and control at the time of the
accident, then you need inquire no further, but return your
verdict for defendant."

Returning now, and in the light of the record examining
the rulings of the court upon the cross-examination of such wit-
ness, we are compelled to say that the exception is well taken.
On his direct examination, the witness had said that, for some
time before the accident, Miss Calvert had been driving the
car; that he sat by her side, and had been teaching her to drive.
He also described how, as they reached a named street corner,
the young lady had become confused in an effort to avoid col-
lision with a pedestrian and another truck, and said that in so
doing Miss Calvert "lost her head, and drove down the side-
walk."  In attempting to cross-examine him, counsel put the
following questions to the witness:

"Q.   And did you, when you started to make the turn
toward the west there with the car, did you pull back the emer-
gency brake?   Q.   Did you pull back the emergency brake, as
you started to make the turn?   Q.   Did you pull the emergency
brake at the time Miss Calvert became unconscious?"

"Mr. Gillespie:   We offer to show that the witness will tes-
tify that the emergency brake was out of order, and would not
stop the car at any appreciable extent, and that he did not pull
back the emergency brake or any brake lever at that time.

"Q.   At the time your auto truck was headed toward that

retaining wall, did you say anything to anyone? Q. And did you do anything at that time?

"Mr. Gillespie: We offer to show that the witness would answer that he said nothing to anyone, and did not say anything to Miss Calvert, and that he did nothing, but made no move, and sat perfectly still.

"Q. Now, after the car started straight south on the sidewalk, and after Miss Calvert had become unconscious, what did you do with reference to the handling of the car? Q. When the car was headed towards these ladies, did you see the ladies ahead of you? Q. And when you saw the ladies ahead of you to the south 40 feet or so, did you make any outcry or noise? Q. Did you make any movement with either of your arms to reach anything or pull back anything? Q. And did you see the ladies when the car came down there, and where they were, and when the car hit one of them? Q. And after the car hit one of them, did you do anything with the car then?

"Mr. Gillespie: We offer to show that, from the time the car started down the sidewalk toward the south off of Pleasant Street, that he did not pull back the hand brake or the emergency brake lever; that it was out of repair, and had been for a good many days, and would have had no appreciable effect on stopping the car. We further offer to show that he did apply the foot lever, after the car had gone down the sidewalk some distance, and that he stopped the car with the foot lever alone, and that that brake alone gradually brought the car to a stop. We further offer to show that he was guiding the car a part of the time as it went down the sidewalk.

"Q. With reference to the mechanism of construction of this truck, Mr. Beggan, at the time of the accident, there was what you would call a hand brake in the front part of the truck, was there not? Q. And did you at any time, and was there at any time just before the accident occurred, anything which would have prevented you reaching forward with your left hand, taking hold of the brake lever, and pulling it back? Q. And after the truck got on the sidewalk on the west side of Seventh Street and immediately south of Pleasant and headed toward the south, was there anything which prevented you

reaching forward with your left hand, grabbing the brake lever, and pulling it back? Q. Or at the same time, was there anything which prevented you from applying the brake through the hand lever?

"Mr. Gillespie: I offer to show that the witness would answer to these last two or three questions that there was nothing to prevent his reaching forward with his left hand, grabbing the hand brake, and pulling it backward or applying it.

"Q. And from the time the automobile got on the sidewalk on the west side of Seventh Street and headed straight south, did you at any time thereafter apply the hand brake or lever brake? Q. And if you did not apply that brake thereafter, why didn't you apply it?

"Mr. Gillespie: We offer to show that, in answer to the second preceding question, he would state that he did not apply it. In answer to the last question, he would state that the reason he did not apply it was that the brake had been out of order for 4 or 5 days, and if it had been applied, it would have had appreciably—no appreciable effect on stopping the car.

"Q. Did you finally, after the accident had occurred, put your foot down on the foot brake? Q. And did you finally bring the car to a stop? Q. Did you put your foot on the foot clutch at any time? Q. Did you say or tell Miss Calvert at any time to dodge to the east or left of this pedestrian? Q. After the pedestrian was dodged, did you say to Miss Calvert, in substance, to turn abruptly towards the west? Q. Did you tell her, when you saw the woman south of you 40 feet or so, to apply the brakes and slow up the car so they could get out of the way? Q. What is the fact, Mr. Beggan, as to whether or not, at the time of the accident, the brakes which are controlled and operated by the hand lever, sometimes referred to as an emergency brake, were out of repair, and had been out of repair some days before the accident? Q. Who stopped the car there?"

To each and every one of the foregoing interrogatories the objection was sustained, and the evidence so offered was excluded. In considering the error thus assigned, it is to be borne in mind that this witness alone was in position to testify of

his own knowledge as to most of the material matters in controversy; he was, moreover, an interested witness, and his interest was, for the most part, quite identical with that of the defendant, and the matters to which his attention was directed by the cross-examination had direct and vital relation to the matter of his direct examination. It is difficult to conceive on what theory most of the objections thereto were sustained. He had testified that it was his duty to drive the car; that he drove it that day, except when he surrendered the wheel to Miss Calvert and was teaching her to drive, and he told his version of the circumstances attending the unfortunate accident. If these things did not open the door to legitimate cross-examination as to all the pertinent circumstances in which the witness played a part, it would be hard to imagine a case in which all pertinent cross-examination may not be excluded. The right to pertinently cross-examine a witness is not a matter of the trial court's discretion. It is a valuable right, essential to a fair trial upon any issue of fact, and prejudice will be presumed from its arbitrary denial. Beggan was the man to whose care and management the truck had been intrusted by the defendant, and was the person for whose negligence, if any, while performing that duty, defendant was responsible. The jury specially found that, at the very time of the killing of Mrs. Coleman, this witness was using the truck in the scope of his said employment and in furtherance of the defendant's business; and the question whether he was exercising reasonable care, caution, and skill in the discharge of that duty was the vital and controlling issue of fact. On that subject, he had been permitted to testify, upon direct examination, to his version of the details of the trip made with the truck, and of the manner in which the truck had left the roadway and ran down the sidewalk into collision with the deceased. To subject him to close and minute cross-examination as to all these details, and to require him to explain or show what effort he made and what care he exercised to keep the truck in the road or to avoid the collision, was the undisputable right of the plaintiff; for, if it be true, as the jury found, that he was then using the car within the scope of his employment and in the furtherance of defendant's business, it was his duty to

make use of every reasonable effort to control the movement of the vehicle and prevent injury to others. The prejudice occasioned by the exclusion of the cross-examination is greatly emphasized by the instruction last above quoted, where the court told the jury that:

"If you fail to find that Ray Beggan was operating the truck or that it was under his supervision and control at the time of the accident, then you need inquire no further, but return your verdict for defendant."

Now, as we have already seen, and as admitted by both Beggan and Miss Calvert, Beggan was *not* driving the car, and he himself was exercising no control over its movement; for he says that, when Miss Calvert was trying to so manipulate the movement of the truck as to avoid collision with others in turning the corner:

4. MASTER AND SERVANT: injuries to third persons: deviation from instructions.

"I was seated there on the side. I did not do anything. * * * I did not move either my hands or arms."

In short, the effect of his story, so far as he was permitted to tell it, was to show that, literally speaking, he was *not* operating the truck at the time of the accident, and therefore, according to the court's instruction, the jury need inquire no further, but must find for the defendant. Doubtless the court did not intend to be so understood, but what else could a jury of laymen understand from such instruction? That the jury was misled thereby is demonstrated by the fact that, while specially and affirmatively finding that, at the time of the accident, the truck was being used by Beggan within the scope of his employment, and in furtherance of the defendant's business, it returns its general verdict for defendant. And indeed, if the car was being operated by Miss Calvert, as in the literal sense of the word it was, the jury was justified in assuming that, under the instruction given them, there could be no recovery against defendant. While the substance of this instruction was repeated several times in the charge of the court, it nowhere by word or clear inference informed the jury that, if (as was in fact found) Beggan was using the car within the scope of his employment or in furtherance of the defendant's business intrusted to him, he could not lawfully commit the operation of

such vehicle to Miss Calvert, nor would the fact that she was permitted to operate it, or that the injury done was caused by her negligence in such operation, exonerate either Beggan or Beggan's employer from liability. Without proper instructions, making this feature of the case clear, it was quite inevitable that the jury should be confused, if not led astray.

IV. Other exceptions are taken to the instructions and to rulings of the court on the admission of testimony; but, as those to which we have adverted necessitate a reversal, and other questions discussed are not likely to arise on a new trial, we do not extend this opinion for their consideration.

For the reasons stated, the judgment below is reversed, and cause remanded for new trial.—*Reversed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.