HALSEY *v.* BOOMER.

1. CORPORATIONS—SALE OF STOCK TO EMPLOYEE—AGREEMENT FOR RESALE NOT AGAINST PUBLIC POLICY.

There is no question of public policy which would prevent an employer, who owned the entire interest of a business at the time of incorporation, from providing, on the issuance of stock therein to an employee, that the employer shall have the right to secure its return to him in case the employee leaves the employ of the corporation.

2. SAME—AGREEMENT TO RESELL NOT WITHOUT CONSIDERATION.

An agreement by an employee of a corporation that his employer at the time of incorporation, who owned the business, could repurchase, at par, at any time, corporate stock sold to said employee, was not without consideration,

since the consideration moving to him was the privilege of purchasing that which he otherwise could not have obtained.

3. SAME—OPTION TO REPURCHASE CONTINUING OFFER WHERE BASED ON CONSIDERATION.

Where an option given to an employer to repurchase corporate stock sold to an employee was coupled up with its sale and was part of the consideration moving to the employer at the time the sale was made, its exercise within a reasonable time was not required; it being a continuing offer under the circumstances.

Appeal from Wayne; Richter (Theodore J.), J. Submitted June 8, 1926. (Docket No. 14.) Decided October 4, 1926. Rehearing denied January 3, 1927.

Bill by H. Ray Halsey against Isaac E. Boomer and others to enjoin the transfer of corporate stock. Defendants filed a cross-bill for affirmative relief. From a decree for plaintiff, defendants appeal. Reversed, and decree entered on the cross-bill.

*Bratton & Bratton,* for plaintiff.

*Prentis, Pugh, Fitch & Carpenter,* for defendants.

SHARPE, J. Prior to 1912, Isaac E. Boomer, hereafter called the defendant, was engaged in business under the name of Michigan Builders Supply Company. On December 12th of that year the defendant corporation was organized with a capital stock of $25,000. The property and assets of the company were turned in as full payment of the capital stock. The plaintiff had been in the employ of the defendant for some time, and when the corporation was organized it was arranged that he should become a stockholder. On January 9, 1913, 100 shares of stock were issued in his name of the par value of $1,000. He executed a note, payable to defendant, for that amount. It con-

Corporations, 14 C. J. §§ 1056, 1057; L. R. A. 1916D, 1117; 7 R. C. L. 237; 2 R. C. L. Supp. 321; 5 R. C. L. Supp. 397.

tained a provision that the stock should be held as collateral and might be sold on default in payment. At the same time the parties entered into an agreement which, after reciting that defendant was willing to sell this stock for $1,000 and plaintiff was desirous of purchasing it, provided, among other things:

1. That plaintiff should indorse his certificate of stock in blank and place it in escrow in the hands of Roy E. Boomer, a son of defendant, who had been elected secretary and treasurer of the corporation.

2. That defendant should have the right to repurchase said stock at any time he desired to do so on payment to plaintiff of the said sum of $1,000, and Roy E. Boomer was authorized to turn over the certificate left in his hands on payment of said sum.

3. Plaintiff was to receive all dividends declared on said stock, and was given the right to vote the same. He agreed not to sell or assign it without the written consent of defendant.

Plaintiff's note was paid largely, if not altogther, out of dividends declared on the stock issued to him. On June 28, 1916, the business showed a large surplus and action was taken increasing the capital stock to $100,000, of which $60,000 was acknowledged to have been paid in, $35,000 of which was taken from the surplus account. A stock dividend of 140 per cent. was thereupon declared and an additional certificate for $1,400 of such stock issued to plaintiff. On that date the plaintiff and defendant executed another agreement relative to this stock of the same tenor and effect as that entered into when the $1,000 certificate was issued.

In the latter part of December, 1923, plaintiff was discharged from the employment of the company for alleged inattention to its business. On January 14, 1924, defendant, through his attorney, tendered to him the sum of $2,400, being the par value of all of the stock in the company issued to him. Plaintiff refused to accept, demanding $6,360, which he claimed was

the then book value of the stock. The certificates issued to him were thereupon canceled and a new certificate issued to defendant for 239 shares and one to his wife, Catherine Boomer, for one share. Two days later plaintiff filed his bill of complaint herein, alleging that he is the owner of 240 shares of said stock and that defendant and his son, Roy E. Boomer, have conspired to deprive him of his interest in the company and in the management of its affairs, and praying that they be enjoined from holding meetings without giving him an opportunity to be present and from transferring the certificates of stock which had been issued to him. The defendant Isaac E. Boomer filed a separate answer, and by way of cross-bill set up the agreements heretofore mentioned and prayed that plaintiff be decreed to be bound thereby and that on defendant's making payment to him of $2,400, of which profert was made, the defendants be deemed to be discharged from any further liability to him. The cause was heard in open court, after which the trial court entered a decree granting plaintiff the relief prayed for in the bill. From this decree the defendants appeal.

In plaintiff's answer to the cross-bill of Isaac E. Boomer he avers that he was induced to sign the agreement relative to the $1,400 certificate of stock by fraud and deception practiced on him by defendant. He testified that he was informed and supposed that the paper he signed was one pertaining to the increase of the capitalization of the stock. His counsel do not here urge this as a ground for relief. The proofs are very convincing that he signed this agreement knowingly. His undertaking in it is but similar to that in the prior agreement pertaining to the 100 shares.

It is plaintiff's claim that these agreements are void for lack of mutuality and that he received no consideration for executing them.

Many men think it advantageous to conduct their business in a corporate name. Confusion incident to death is thus avoided. A few shares are usually issued in the names of relatives or employees to permit the corporate organization to be effected. When a man, as here, owns the entire interest at the time of incorporation and is willing or desirous that an employee purchase a few shares of its stock, we think no question of public policy will prevent him from so providing on the issuance of such stock to an employee that he shall have the right to secure its return to him should such person leave the employ of the corporation. He thus prevents any person not directly interested in the work of the corporation from securing an interest therein, and we know of no reason why this may not be done. Had the plaintiff been the owner of the stock and the agreement provided that defendant should have the right to purchase it at any time he elected to do so, the authorities relied on by his counsel would be controlling. But the plaintiff did not own this stock. It was not on the market for sale. Defendant was under no obligation to sell it to him. But defendant was willing to sell and plaintiff was willing to buy on the conditions stated in the agreement. The consideration moving to plaintiff was the privilege of purchasing that which he could not otherwise have obtained and the issue of the stock certificate to him. The consideration moving to defendant was the promise of plaintiff to pay for the stock and his further promise to indorse the certificate in blank and to "place the same in escrow in the hands of Roy E. Boomer" and his authorization of Roy E. Boomer to turn the certificate over to defendant at any time he desired to repurchase the stock on payment of the par value thereof.

It is urged that plaintiff's promise to sell was a mere option and that defendant's acceptance of it must have

been had within a reasonable time.    This would un-
doubtedly be true if the option to purchase were not
coupled up with the sale.    The right to exercise it as
provided in the agreement was a part of the considera-
tion moving to defendant at the time the sale was
made.    While there was no obligation resting on de-
fendant to purchase, and the contract in that respect
lacked mutuality, yet the promise of plaintiff that he
might do so, founded on a sufficient consideration, was
a continuing offer and when defendant elected to do
so the rights of the parties became fixed and settled
in accordance with its terms.

The decree of the court below is reversed and set
aside.    One may be entered here dismissing plain-
tiff's bill and granting defendant the relief prayed for
in his cross-bill, with costs of both courts to appellants.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST,
CLARK, and McDONALD, JJ., concurred.