L. H. Hughes, Appellant, v. Western Union Telegraph Corporation, Appellee.

No. 40494.

April 10, 1931.

*Edward J. Dahms* and *Elmer A. Johnson,* for appellant.

*O. N. Elliott* and *V. C. Shuttleworth,* for appellee.

ALBERT, J.—The concrete facts in this case material to a determination of the question involved are: One Hawks was a messenger boy employed by the defendant to deliver messages in the city of Cedar Rapids. On the 28th day of July, 1928, he was given three messages, to be delivered to different points in said city. He started on his duty, and after he had delivered one message, his bicycle became incapacitated, and without the knowledge or consent of the defendant, he borrowed a Ford automobile from a neighbor boy, and started to deliver the last of the three messages; and while he was so attempting, through his negligence his automobile collided with another automobile in which the plaintiff was riding, resulting in physical injuries to plaintiff, for which he brought this action.

There is but one question raised in the case. Plaintiff's evidence satisfactorily shows that the relation of master and servant existed between the defendant and Hawks, and that Hawks was in the pursuit of his master's business in attempting to deliver this telegraphic message. The general rule as to the liability of the master for the wrongful acts of his servant while within the scope of his employment is too well settled to need citation of authority. Appellant relies, however, upon certain Iowa cases, to which we will give attention.

In *Yates v. Squires,* 19 Iowa 26, the holding was that the servant, in what he did and when he did it, was outside of the master's service, and hence there was no liability.

In *Lewis v. Schultz,* 98 Iowa 341, the question was whether the servant was acting within the scope of his employment in setting fire to certain piles of hay in a meadow. The evidence in the case showed that there was some conversation between the master and the servant about setting fire to the same, and the court said:

"The evidence also shows that the hay which remained on the ground was an obstruction which would interfere to some extent with the use of the mower during the next season, and, if left, that it would kill the grass which it covered. It also appeared that the removal or destruction of part of the hay was necessary in order to level ant hills which it covered. Surely, the setting out of the fire was within the scope of the servant's employment, or at least the jury was authorized to so find."

There is certain dictum in this case which is not necessary to the decision, and it is upon this dictum that the appellant largely relies for authority in this case.

Appellant also relies upon *Healy v. Johnson,* 127 Iowa 221. This case involves the facts where a grocer's servant, in delivering groceries with a horse and wagon, left the horse untied, and it ran away, inflicting injuries upon the plaintiff. The defense was that the servant had been instructed that, every time he left the horse and wagon, the horse was to be tied; and the court rightfully held that, under such circumstances, the secret instruction of the master to the servant was not a defense to an action for the negligent acts of the servant, where the act was so clearly within the scope of the servant's employment.

The real question involved here is whether or not, where a messenger is provided with no instrumentality for carrying on his work, but usually uses a bicycle for that purpose, he may, without the knowledge or consent of the master, either express or implied, borrow an automobile for such purpose. This question is elaborately and completely discussed in the case of *Kennedy v. Union Charcoal & Chemical Co.,* 156 Tenn. 666 (4 S. W. (2d Ser.) 354), where the Supreme Court of Tennessee, after reviewing practically all of the decisions on this question, drew the following conclusion:

"To hold the master liable in the circumstances of this case would be to extend the rule of *respondeat superior* further than any adjudication to which our attention has been directed has yet gone, as well as beyond the rule of reason. Such a ruling would be most disastrous in its results, and, as said by Mr. Justice Park, if this were the rule, 'every master might be ruined by acts done by his servants without his knowledge or authority.' "

Many cases from other jurisdictions are cited by the Tennessee court as reaching this same conclusion, all of which support the conclusion there stated.

The Court of Appeals of the state of Maryland, in the case of *Goldsmith v. Chesebrough,* 138 Md. 1 (113 Atl. 285), under a similar set of facts, reached the same conclusion.

In the case of *McCaughen v. Missouri Pac. R. Co.* (Mo.

App.), 274 S. W. 97, under a similar set of facts (Liese being the servant), the court said:

"Though there was evidence adduced tending to show that Liese was acting in the course of his employment in going to Fourteenth and Market Streets for the purpose of interviewing Sergt. Simpkins of the Terminal Railroad Company regarding a car robbery, yet that fact alone is not legally sufficient to go to the jury as tending to show that the use of the automobile by Liese, at the time of the accident, was authorized by the defendant." The court further held: "Where an automobile, although not owned by the master, is repeatedly used in the master's business with his knowledge and assent, there arises an implied assent and authority to use it in the master's business, rendering him liable to respond for the negligence of those using it in connection with his business. But the mere fact that an automobile was used by the servant on one occasion in the business of the master, unaccompanied with any evidence of similar acts in the meantime, does not justify the inference that the servant was later authorized to use the machine upon the master's business."

See, also, *St. Louis, I. M. & S. R. Co. v. Robinson*, 117 Ark. 37 (173 S. W. 822), where a call boy for a railroad company, while riding a bicycle, caused the injury complained of. The court said:

"If the services required of the call boy could not have been performed in the time given therefor without the aid of the instrumentality used, the bicycle, it would have occasioned a necessity, and the knowledge by the agent of such use in the performance of the service would have amounted to an implied authorization thereof, making the railroad liable for a negligent injury thereby. But such is not this case, and there was no testimony to warrant the jury in finding that the bicycle was necessarily used in the service of the railway company by its call boy, with the knowledge of its servants of the use and necessity therefor, and consequently no negligence shown in the injury to appellee for which it is required to answer or respond in damages."

This seems to be the uniform holding of the authorities on

this proposition; and while the question has never been directly passed upon by this court, we are disposed to follow· this line of authority. We conclude, therefore, that the plaintiff failed to make a case herein, and the court rightfully directed a verdict in favor of the defendant.—*Affirmed*.

FAVILLE, C. J., and EVANS, STEVENS, and WAGNER, JJ., concur.

GRIMM, J., takes no part.