ANN L. HEINTZ, Appellee, v. IOWA PACKING COMPANY, Appellant.

No. 43388.

518

July 31, 1936.

Opinion Modified and Rehearing Denied November 21, 1936.

Stephens & Wisdom and Carl Smedal, for appellee.

Hallagan, Fountain, Stewart & Cless, for appellant.

MITCHELL, J.—On the morning of December 7, 1933, shortly before eight o'clock, Ann L. Heintz was being driven by Frances Logsden from Nevada to Ames over the Lincoln Highway in a Ford V-8 sedan. At a point about 1¼ miles east of Ames the automobile in which they were riding was struck by a car driven by one R. T. Randolph, who, it is claimed, was traveling eastward upon the wrong or north side of the highway at a high rate of speed. The evidence shows the Logsden car was being operated at a reasonable rate of speed on the right or north side of the pavement. The collision occurred at the depression between two hills. The Randolph car suddenly appeared over the top of the hill, coming from the west, on the north or left-hand side of

the road going east, and continued on the same side of the road to the point of the collision. Frances Logsden immediately upon seeing the Randolph car approaching, put on the brakes and slowed down her car, pulling it over to the side of the pavement as far as she possibly could.

In this unfortunate accident Ann Heintz was injured and Mr. Randolph was so seriously injured that he died the next day.

There is no question raised on this appeal as to the cause of the accident or the negligence of Mr. Randolph. Further statement of the facts with reference to the happening of the accident is therefore unnecessary.

R. T. Randolph was employed by the Iowa Packing Company as a salesman and had been so employed for more than a year prior to the accident.

Ann L. Heintz commenced this action against the Iowa Packing Company, the employer of Randolph, for damages. The case was submitted to a jury, which returned a verdict in favor of plaintiff, and from said judgment and verdict the Iowa Packing Company has appealed to this court.

There are but three questions raised on this appeal: First, that the lower court erred in not sustaining the motion of the defendant for a directed verdict, made at the close of the plaintiff's evidence; second, that the trial court erred in not sustaining the motion of the defendant for a directed verdict, made at the close of the submission of the evidence; third, and lastly, that the trial court erred in overruling motion for a new trial, which was made upon the grounds of newly discovered evidence.

In the order named we shall take up the questions raised.

I. It must be kept in mind that it is the well-established law of this State that defendant's motion to direct a verdict admits the truth of plaintiff's evidence, and every inference reasonably permissive therefrom. The court, in ruling on a motion to direct, by defendant, must consider plaintiff's evidence in the most favorable light and with the strongest inferences reasonably deductible therefrom, in plaintiff's favor. McWilliams v. Beck, 220 Iowa 906, 262 N. W. 781; White v. Center, 218 Iowa 1027, 254 N. W. 90.

It is the claim of the appellant that the lower court should have directed a verdict at the close of appellee's testimony because there was no evidence of the employment of Randolph at the time and place of the accident involved in this controversy,

and that the burden of proof was upon the appellee affirmatively to establish and show that Randolph was an employee of the appellant, and that the relationship of master and servant existed at the time and place of the accident involved herein.

To ascertain the facts we must turn to the record.

Randolph was employed by the Iowa Packing Company in March of 1932 as a car-route salesman. A car-route salesman is one who calls on customers or dealers outside of Des Moines, and the Packing Company had twenty-eight or twenty-nine car-route districts or territories in Iowa in 1933. Randolph had demonstrated considerable ability as a salesman and was used by the company as a specialty man, traveling various car-route territories in Iowa, Illinois and Missouri. He received his instructions on Saturday of each week from the car-route sales manager at the plant in Des Moines. The routes were numbered and there was a headquarter city for each one. Fort Dodge was the headquarter city for route No. 18 and Marshalltown for route No. 19. On December 2, 1933, the Saturday preceding the accident, Randolph, as usual, went to the office of the appellant company in the City of Des Moines and received instructions from his superior officer. These instructions were partly oral and partly written. It is the claim of the Packing Company that on that day Randolph was instructed to proceed to Fort Dodge to spend the first three days of that week in the promotion of a soap campaign which the company was waging; that he was directed to meet a Mr. Sampson, who was the representative of the appellant company in the territory known as route No. 19, at Waterloo, on the morning of Thursday, December the 7th; that Randolph did proceed to Fort Dodge, driving in his own personal car, and spent the first three days of the week in that city; that he left Fort Dodge on the evening of December the 6th and drove south and west to the town of Jefferson, where he stayed that night; that he had no authority to go to Jefferson and no business of the company to attend to in that city; that he left Jefferson on the morning of December 7th some time around six o'clock and was proceeding eastward at the time that the collision occurred; that Randolph had been an employee of the appellant company and as such he had received definite instructions as to what he was to do, when he was to do it, and where he was to work; that at the time and place of the accident he had no business whatever for the company and was approximately 100

miles from the place he had been ordered to be, one hour prior to the time of this accident; and that therefore, at the time of the accident he was not in the employ of the appellant company.

There were introduced in evidence copies of two letters, one of which was written to Mr. Weeks, the representative of the company at Fort Dodge, and the other written to Mr. Sampson, the representative at Marshalltown. There is also evidence that copies of these letters were given to Mr. Randolph. The letter to Mr. Weeks informed him that Randolph would spend the first three days at Fort Dodge, working in the soap campaign. The letter to Mr. Sampson asked him to meet Randolph at Waterloo on the morning of December 7th. There is also evidence that Randolph was assigned to routes 18 and 19 for the week commencing December 4th. Route 18 consisted of the territory surrounding Fort Dodge, with headquarters in that city, with Mr. Weeks in charge; route 19 consisted of the territory around Waterloo, with headquarters at Marshalltown, with Mr. Sampson in charge. There is also evidence that shortly after the accident Randolph was interviewed in the hospital and told the sheriff that he was on his way to Marshalltown. It is the contention of the appellant that Randolph was specially assigned for Thursday morning, December 7th, at Waterloo, and that he left the employment of the company when he proceeded to Jefferson, which was south and west of Fort Dodge and in the opposite direction from Waterloo, where he was to work on Thursday morning according to appellant's claim. However, there is in the record the assignment sheet showing assignment of the various car-route salesmen for the week of December 4th and Randolph is listed for routes 18 and 19. At the time of the accident he was proceeding to Marshalltown, which was the headquarter city of route 19.

[ ■■ ] A review of this record shows that Randolph was employed by the appellant company; that he was employed by the week; that his assignment was by the week; that the accident happened during regular working hours. There is a conflict in the testimony as to whether he was assigned to routes 18 and 19 for the week of December 4th, or whether he had a special assignment on the morning of December 7th. It was therefore a question for the jury to decide, and the trial court did not err in overruling the motion for directed verdict.

Appellant contends that the trial court erred in overruling

grounds 7 and 10 of appellant's motion for a directed verdict, which are as follows:

"7. That the plaintiff has failed to discharge the burden of proving that the automobile involved in the accident and owned and driven by the said R. T. Randolph was so driven by him with the consent, knowledge, or permission of the defendant, and that the evidence is affirmative and without contradiction to the contrary.

"10. The plaintiff's evidence affirmatively shows that there was no general authority extended to the said R. T. Randolph by the defendant to use and operate his automobile in their service, and the evidence, to the contrary, reveals that the same was not used except upon express authorization, and that no such authorization is shown by the plaintiff's evidence."

The appellant company furnished its own cars to its route salesmen for use by them in the furtherance of the company's business. Its salesmen also traveled by train and by bus. Randolph was not furnished a car by the company and there is no evidence that shows he was directed to proceed to Fort Dodge by any special means of transportation. He drove his own car to Fort Dodge, where he met Weeks, the representative of the appellant company, who had a car owned by the company. It was the custom of the appellant company that a specialty man working on any route territory was to drive with the route salesman in the company-owned car when in that territory. Randolph had no special route territory; he was sent wherever the needs of the company demanded, covering parts of Iowa, Missouri and Illinois. His territory was not limited. Careful distinction must therefore be made between this case and those cases coming within the so-called "house-to-house canvass" rule, where the salesman is confined to a small territory and where his duties do not necessitate extensive travel over a large area.

The general rule as to the liability of a master for injuries done by a servant in the furtherance of the master's business, is laid down in Seybold v. Eisle, 154 Iowa 128, 134 N. W. 578, 579, Ann. Cas. 1914A, 1097. In the case cited, this court, quoting from Lewis v. Schultz, 98 Iowa 341, 67 N. W. 266, stated the rule as follows (p. 130) :

"If the servant was acting in the course of his employment

in clearing up and leveling off the meadow, and while so doing committed the wrong complained of, the master is liable, although the servant may have disobeyed the master's instructions with reference to setting out fire. It is sufficient to make the master responsible if the wrongful act of the servant was committed in the business of the master, and within the scope of his employment, and this, although the servant in doing it departed from the instructions of his master (Mechem Agency, section 734); or, as stated by Judge Cooley in his work on Torts (2d Ed.), p. 63: 'It is, in general, sufficient to make the master responsible that he gave to the servant an authority, or made it his duty, to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment.' ''

The evidence in this case shows that Randolph on several occasions prior to this time had used his own car in transacting business for the company; that this was known to his superior officers; that he received compensation for the use of his car by way of an allowance of so much per mile; that in addition to this, in the expense report which he was required to make each week, the question was asked whether the car used was a company car or his own car, and in the expense accounts that he made out on various occasions he listed the fact that he had used his own car and asked mileage at the rate provided for by the company.

In Hughes v. Western Union Tel. Corp., 211 Iowa 1391, at page 1394, 236 N. W. 8, 9, this court said:

'' 'Where an automobile, although not owned by the master, is repeatedly used in the master's business with his knowledge and assent, there arises an implied assent and authority to use it in the master's business, rendering him liable to respond for the negligence of those using it in connection with his business.' ''

In the case of Dillon v. Prudential Insurance Company, 75 Cal. App. 266, 242 Pac. 736, at page 738, the court said:

''As to the reasonableness of the means of travel employed by the agent, certainly an automobile was a reasonable means of conveyance in a district as extended as that assigned to McDonald, and the Superintendent of the insurance company testified

that the agent was permitted to select his own means of travel about, and that the company objected to no reasonable means. * * *

"In the instant case the question whether or not the agent was acting within the scope of his employment at the time of the accident, and the question whether or not it was reasonably contemplated that the agent should use an automobile in the performance of his duties, were questions of fact submitted to the jury under appropriate and explicit instructions, and with the determination of the jury upon these questions, this court cannot interfere."

█■█ Under the rules of law applicable to the facts in this case, a verdict should not be directed where there is substantial evidence, which, along with the strongest inferences which can be drawn therefrom in favor of the plaintiff, viewing the evidence in the most favorable light, tends to establish the allegation of implied authority of Randolph to use his personal car during the week of December 4th. Certainly, there is ample evidence to establish a prima facie case, and the court properly refused to take the case from the jury.

The next error argued by the appellant is that the lower court erred in not sustaining the motion for a directed verdict at the close of plaintiff's evidence on the ground that the evidence failed to show that the accident involved herein occurred at a time or place when Randolph was acting in the course, or within the scope, of his employment. It is claimed that when Randolph left Fort Dodge on the night of December 6th and drove to Jefferson, a distance of more than forty-five miles south and west of Fort Dodge, he abandoned his employment for purposes of his own and the evidence does not show that he had re-entered the same or that he was in fact pursuing his master's business in any sense at the time of the accident.

Randolph had finished his work at Fort Dodge and drove to Jefferson, where he spent the night with a friend, leaving the next morning shortly before six o'clock. It is the contention of the appellant that Randolph should have proceeded immediately to Waterloo, where he was under instructions to work the balance of the week; and that when he went to Jefferson the trip was not taken on behalf of the company but was a personal trip of Randolph; that he had no business at Marshalltown or Ames;

that there was a paved highway between Fort Dodge and Waterloo and there was direct train service on the Illinois Central, with a train leaving Fort Dodge every evening at ten o'clock.

The question of disregard of instructions or deviation from the strict line of duty by an employee is discussed fully by this court in the case of Orris v. Tolerton & Warfield Co., 201 Iowa 1344, 207 N. W. 365, 368. On pages 1349–1351 this court said:

"The undisputed facts that the truck belonged to defendant, that Taylor was employed by defendant to operate it, and with it to deliver merchandise over the city, together with the fact that the accident occurred within the territory in which he was employed, and during hours within which deliveries were or might be made, would justify the jury in inferring that Taylor, at the time of the accident, was in the line of his employment. Landry v. Oversen, 187 Iowa 284, 174 N. W. 255; Baldwin v. Parsons, 193 Iowa 75, 186 N. W. 665; Curry v. Bickley, 196 Iowa 827, 195 N. W. 617; Mooney v. Canier, 198 Iowa 251, 197 N. W. 625; Napier v. Patterson, 198 Iowa 257, 196 N. W. 73. See further Stumpf v. Montgomery, 101 Okla. 257, 226 Pac. 65, 32 A. L. R. 1490; Lee v. Pierce, 112 Okla. 212, 239 Pac. 989.

"Disregard of instructions, or mere deviation by Taylor from his strict line of duty, though for purposes of his own, would not, of itself, relieve defendant from responsibility. The departure must have been so substantial as to amount, for the time being, to an abandonment of the business of the defendant, and to the serving of some purpose wholly independent of it. Jones v. Lozier, 195 Iowa 365, 191 N. W. 103; Curry v. Bickley, 196 Iowa 827, 195 N. W. 617; Rowland v. Spalti, 196 Iowa 208, 194 N. W. 90; Traynor v. Keefe Const. Co., 199 Iowa 575, 202 N. W. 218; Baker v. Allen & Arnink Auto Rent. Co., 231 N. Y. 8, 131 N. E. 551; Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 38 Am. St. Rep. 361, 27 L. R. A. 161; Loomis v. Hollister, 75 Conn. 718, 55 Atl. 561; Thomas v. Lockwood Oil Co., 174 Wis. 486, 182 N. W. 841; McKeage v. Morris & Co. (Tex. Civ. App.), 265 S. W. 1059; Gulf Ref. Co. v. Texarkana & Ft. S. R. Co. (Tex. Civ. App.), 261 S. W. 169.

"Whether the servant at a given time is acting within the scope of his employment must usually be decided not only from the established facts, but from presumptions and inferences raised by them. The question is usually one of fact for the jury,

and rarely one which may be disposed of by the court, as a matter of law. Seybold v. Eisle, 154 Iowa 128, 135, 134 N. W. 578, Ann. Cas. 1914A, 1097; Gulf Ref. Co. v. Texarkana & Ft. S. R. Co. (Tex. Civ. App.), 261 S. W. 169; Michael v. Southern Lumber Co. [101 N. J. Law, 1], 127 Atl. 580; Venghis v. Nathanson [101 N. J. Law, 110], 127 Atl. 175; Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361; Loomis v. Hollister, 75 Conn. 718, 55 Atl. 561; McKeage v. Morris & Co. (Tex. Civ. App.) 265 S. W. 1059; 39 Corpus Juris 1361, 1362. If Taylor at the time of the accident, was acting in the course of and within the scope of his employment, defendant would be liable for his negligence, notwithstanding the fact that he might at the same time have been serving some purpose of his own. Jones v. Lozier, 195 Iowa 365, 191 N. W. 103; McKeage v. Morris & Co. (Tex. Civ. App.) 265 S. W. 1059; Thomas v. Lockwood Oil Co., 174 Wis. 486, 182 N. W. 841; Gulf Ref. Co. v. Texarkana & Ft. S. R. Co. (Tex. Civ. App.), 261 S. W. 169.

"The deviation claimed was, at most, a suspension or temporary abandonment by Taylor of the defendant's service. If Taylor, in going to his mother's house for the bed spring, did totally depart from defendant's business for his own exclusive purpose, the relationship of master and servant was restored when he returned to the point of departure or the zone of service as it was when he left it; for it remained his duty to take the truck thence to his home. When he returned to that point, or to a point that might be said to be within the zone of his employment on that occasion, and was engaged in taking the truck to his home, the defendant's liability for his acts afterward occurring in the conduct of the business was re-established. Curry v. Bickley, 196 Iowa 827, 195 N. W. 617; Riley v. Standard Oil Co., 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382; Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Thomas v. Lockwood Oil Co., 174 Wis. 486, 182 N. W. 841; Cummings v. Republic Truck Co., 241 Mass. 292, 135 N. E. 134. It cannot be said, as matter of law, on this record, that the accident would not have happened if Taylor had not gone to his mother's house. Cummings v. Republic Truck Co., 241 Mass. 292, 135 N. E. 134."

[■■] Applying the rules laid down in the above cited case, to the case at bar, the jury might have found that Randolph was

assigned to route No. 19 commencing with December 7th. The headquarters of route No. 19 were at Marshalltown, where the representative of the company for that territory lived. No special place was designated for Randolph to stay on that night. He went to Jefferson to stay. At the time of the accident, there is evidence that he was proceeding to Marshalltown. The jury was entitled to infer that as Randolph was sent as a specialty salesman into route No. 19 he had business for the company in Marshalltown. He was at the time of the accident on a direct route to the very territory where he was assigned to work.

Giving consideration to all of the evidence offered we find that there was a direct conflict in the evidence as to Randolph's assignment for the week. It was for the jury to decide and the trial court could not direct a verdict.

II. The next question raised by the appellant is that the trial court erred in overruling ground 6 of appellant's motion for directed verdict, which is as follows:

"That the evidence affirmatively and conclusively and without dispute shows that the defendant maintained or exercised no control whatever over the method and manner of the said Randolph in the driving of his said automobile, and that in the matter of the use thereof by the said Randolph under the facts herein disclosed he was not in the driving thereof the employee of this defendant, but was in the matter of propelling himself by means of his own automobile from one scene of his duties to the place where he was next to perform them, not in the capacity of an employee, but as an independent contractor as to the method that he employed to transport himself."

And so we are confronted with the difficult question of whether Randolph was an independent contractor, or the relationship of master and servant prevailed.

In Burns v. Eno, 213 Iowa 881, 240 N. W. 209, 210, the late Justice Evans very pertinently and aptly said at page 884:

"The question raised is one which lends itself to endless debate and rather plausible argument on either side. Discussion of the question abounds in the books. Harmony is apparent in the statement of principles and in the platitudes and abstract phases of the subject. But in the application of the abstract to the concrete, and of the principles to the particular case in hand,

there is much diversity, and confusion of opinion in the precedents in different jurisdictions. In this state of the precedents, we can only hope to maintain, if we may, consistency in our own decisions.''

And at page 885:

''The term [independent contractor] has a fairly well defined meaning under the decisions of many jurisdictions, including our own. An independent contractor, under the quite universal rule, may be defined as one who carries on an independent business, and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results.''

Again, at page 886 of the opinion the court said:

''That the contract of an employee is one *of service,* whereas the contract of an independent contractor is one *for service,* is the terse differentiation stated in that case.'' ·

In the case of In re Estate of Amond, 203 Iowa 307, 210 N. W. 209, 211, this court said at pages 307, 308:

''The statutes of this state do not, as do the statutes in some other jurisdictions, define an independent contractor; but section 1421 provides that an independent contractor shall not be deemed a workman or employee, within the meaning of the act. The meaning of the term 'independent contractor' has been many times judicially determined. A large number of these definitions are collected in the annotation following Nichols v. Hubbell, 19 A. L. R. 221. Likewise, various tests have been applied by the courts of this country for determining, under the facts of a given case, whether the claimant was an employee or an independent contractor. Among these various tests are the right to control and direct the work of the person employed; the right to terminate the relationship at will, without involving liability for the breach of the contract; the nature of work contracted for; the right of a teamster to employ substitutes; the mode of making compensation; the furnishing by the claimant of teams, wagons, tools, and the instrumentalities with which the services are performed; control over hours of work; and other pertinent tests. These tests are also discussed in the annotation following Re Dobson, 42 A. L. R. 603.

"Looking to our own cases, we find that the test quite uni-formly applied in this state is: Does the employee represent the master as to the result of the work only, or as to the means by which the result is obtained? If as to the result, and in the employment of the means he acts entirely independently of the master, he must be regarded as an independent contractor. Overhouser v. American Cereal Co., 118 Iowa 417, 92 N. W. 74. In all of the cases decided by this court, particular emphasis has been given to the right of the employer to dictate and control the manner, means, and details of performing the services. Hoff v. Shockley, 122 Iowa 720, 98 N. W. 573, 64 L. R. A. 538, 101 Am. St. Rep. 289; Humpton v. Unterkircher & Sons, 97 Iowa 509, 66 N. W. 776; Miller v. Minnesota & N. W. R. Co., 76 Iowa 655, 39 N. W. 188, 14 Am. St. Rep. 258; Parrott v. Chicago G. W. R. Co., 127 Iowa 419, 103 N. W. 352; Francis v. Johnson, 127 Iowa 391, 101 N. W. 878. The foregoing tests appear to us as the more logical and satisfactory. Unless the employer has the right to direct the means and manner of doing the work and has the right of control over the employee, the doctrine of *respondeat superior* is not applicable. Callahan v. Burlington & M. R. R. Co., 23 Iowa 562. An essential element of this doctrine is the right of control by the master or employer over the servant or employee. Brown v. McLeish, 71 Iowa 381, 32 N. W. 385; Kellogg v. Payne, 21 Iowa 575. The tests suggested have been applied in numerous decisions of this court involving the Workmen's Compensation Act. In each of these cases, the determinative question was: Did the employer have the right to direct the workman as to the manner and means of doing the work: that is, did he exercise control over him as to the means employed and manner of rendering the services? Pace v. Appanoose Co., 184 Iowa 498, 168 N. W. 916; Knudson v. Jackson, 191 Iowa 947, 183 N. W. 391; Franks v. Carpenter, 192 Iowa 1398, 186 N. W. 647; Root v. Shadbolt & Middleton, 195 Iowa 1225, 193 N. W. 634; Svoboda v. Western Fuel Co., 195 Iowa 1137, 193 N. W. 406; Norton v. Day Coal Co., 192 Iowa 160, 180 N. W. 905."

There are no Iowa cases upon the proposition that confronts us in the case at bar, and the authorities outside of the State appear to be in conflict.

In Dillon v. Prudential Insurance Company, 75 Cal. App.

266, 242 Pac. 736, the Court of Appeals of the state of California said at page 738:

"It is contended by appellant insurance company that McDonald was not an agent, but an independent contractor. He was working under detailed regulations from his employer, and under an agreement to give his entire time between specified hours to carrying out the instructions of the company. He was paid a weekly salary, and could have been discharged at any time."

In Fidelity Union Life Insurance Company v. McGinnis, (Tex. Civ. App.), 62 S. W. (2d) 186, at page 188 the court said:

"In determining whether an agent is an independent one, or, as is usually termed, an 'independent contractor', as distinguished from a mere servant or employee, the right of the principal to control the agent in the details of the work to be performed is usually decisive of the question. If the principal has such right, then the agent is regarded as a servant or employee, unless other circumstances and facts necessarily impel a different conclusion. * * *

"The contract of agency expressly provides that the agent Deen is to act under the control and instruction of the company. This plainly means the company reserved the right to control Deen in the details of the service he was engaged to perform. Under this stipulation we have no doubt the company would have had the right to insist that Deen should use an automobile in the transaction of the business entrusted to him or that it could have commanded him not to use a car while so engaged. * * * As we view the relationship of the parties, as evidenced by the quoted provision, Deen was a mere employee, bound to devote his whole time to the company's service; engaged to procure applications for insurance with the company exclusively, to collect the first annual premium, to deliver policies, account for all moneys collected, less commissions due him; and to 'render such services in connection with the business done through his agency as the company may request from time to time', all 'under the control and instruction of the company'. The plain import of this contract is that the company had the right to control Deen in the details of his services, and fixes his status as an employee, rather than an independent contractor."

That court then said at page 188:

"There is no evidence of an express authorization to use an automobile in the work done by Deen, nor is there any testimony that he was forbidden to do so, as in the Denson case, supra.

"In view of the service he was engaged to perform and the territory which it was necessary for him to cover, it may well be assumed Deen had implied authority to use a car in covering his territory and rendering the service he was engaged to perform. [Citing cases.]"

In Robertson v. Olson, 181 Minn. 240, 232 N. W. 43, the Supreme Court of Minnesota said at page 45:

"While there is a zone where the distinction between employee and independent contractor is not always clear, we think that reasonable minds would not necessarily conclude that Olson was an independent contractor but might differ as to his status, and that a jury would be justified in finding that he was an employee, and that the accident occurred in the course of his employment. All the circumstances of this case and the legitimate inferences to be drawn therefrom, make it a case for a jury."

Randolph received detailed instructions as to his work, both orally and by mail, from his superior officer. He filed a weekly expense report which showed whether he was using the appellant company's car or his own, and if his own, the mileage, so that the expense would be allowed at a certain rate per mile. He was instructed to report promptly the details of any accident to the car or to any person, and to state if the car was the property of the company or his own. The territory which he covered was a large one, including not only Iowa but at various times Missouri and Illinois. The manner of transportation was not designated. Randolph was charged with the duty of getting from one part of the State to another. Certainly an automobile was a reasonable means of transportation.

In the case of Cook v. Sanger, 110 Cal. 90, 293 Pac. 794, the California court had under consideration a case wherein Sanger was employed by a manufacturing company to look after outside work. He drove his own automobile and was paid mileage of 7 cents per mile for traveling expenses, whether he used his own car or traveled by other conveyance. The mileage cov-

ered the shortest way, irrespective of the route taken by the employee.

The court reviewed at considerable length the case of Pyyny v. Loose-Wiles Biscuit Company, 253 Mass. 574, 149 N. E. 541; Khoury v. Edison Electric Company, 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159, from the Massachusetts court, relied upon by appellant in the case at bar, and in discussing these questions said, 110 Cal. 90, 293 Pac. 794, at page 799 of the opinion:

"While these opinions are by a court of unquestioned ability, nevertheless, a few important elements have apparently been overlooked or are not mentioned in the opinions, or else there is a confusion of ideas. But giving the two cases all the weight to which they are entitled, they are directly at variance with what appears to be the settled law of this state. Nor do we think that the distinction between the control of the person operating the automobile and the mechanical control of the automobile is tenable. If one has control or the right to control the person operating the automobile, has the power of employment or discharge, and may direct the person operating the automobile where to go and what services to perform upon his mission, and has a right to discharge the employee for any disobedience or any wrongful act while on such mission, we think the legal power of control and the relation of master and servant is established."

Randolph was under the control of the appellant company. On the very night before this accident happened, at about 7:30, the assistant sales manager telephoned him at Fort Dodge. Had the sales manager at that time directed Randolph to go to some certain place it would have been his duty to follow that instruction. His entire time was occupied by his work. The company had the right to discharge him at any time that it saw fit. He received his instructions on Saturday at the plant office in Des Moines as to where he was to go and what he was to do the following week.

[■■] We believe the better rule is that where the employer has control over the employee, the fact that the employee uses his own automobile is wholly immaterial if that automobile is being used when the employee is in the course of his employment. In other words, the control of the man behind the wheel is the same as the control of the wheel, for that car will go wherever the man directs it, and the man will direct it wher-

ever the appellant company that has control over him, orders him to go. Randolph was a servant of the appellant company, doing its bidding, acting under its instructions at all times. The court could not determine the question from the evidence as a matter of law, and therefore properly submitted the case to the jury upon appropriate instructions, which are not questioned on this appeal.

This court said in the case of Niemann v. Iowa Electric Company, 218 Iowa 127, at page 132, 253 N. W. 815, 818:

"The authorities generally hold that notwithstanding a written contract, if the master retains control and direction of the men, with the right of fixing their pay and the right of discharging whom he pleases, with power of control over the employees, the relationship of independent contractor is not created, and the acts and conduct of the parties will govern their relationship."

■■■ III. We come now to the last question raised by the appellant, that the court erred in overruling ground 12 of appellant's motion for new trial, which was based upon the grounds of newly discovered evidence which appellant alleged was material to its cause and which was unknown to appellant prior to that time and it was unable to produce altho it had used reasonable diligence to discover this evidence, at the trial of this cause.

Attached to the motion for new trial was an affidavit setting forth the names of the witnesses and an abstract of the evidence which appellant claims these witnesses would have given at the trial.

The record shows that shortly after the accident an investigator on behalf of appellant company went to Fort Dodge and interviewed Mr. Weeks, who was the man Randolph worked with up until Wednesday night, December the 6th; that he asked Weeks if he knew where Randolph was after he left him about 7:30 or 8 that evening. Weeks did not know, so he informed him. After the trial of this case, one of the attorneys representing appellant company went to Fort Dodge and again interviewed Weeks, who informed the attorney that he did not know but he would telephone the landlady where Randolph had stayed. He did this and from her secured the names of the witnesses appellant now desires to produce. One of these witnesses was a young lady who claimed to have danced with Randolph

that night at a place known as the Shamrock Club in Fort Dodge. Another witness was a young lady whom Randolph met at an oil station around twelve o'clock, according to her story, and who took her from there to Gowrie, Iowa, where she lived.

There is no showing here made that the evidence which the appellant company now desires to offer, and which is the basis of their motion for a new trial, could not have been discovered and produced at the time of the trial. The representative of the company came to Fort Dodge shortly after the accident to investigate the facts. He had the opportunity to ascertain the names of these witnesses at that time. Almost a year elapsed before the trial of this case. No effort was made to secure these witnesses in that time. If new trials were to be granted upon the showing made in this case of newly discovered evidence, we believe it would be impossible ever to terminate cases of this kind. This accident happened in 1933 and almost three years have elapsed since that time. Appellant was ably represented by counsel, and from the record here presented and the elaborate brief and argument furnished, its rights have been protected.

The lower court was right in overruling the motion for new trial.

No question is here raised in regard to the negligence of Randolph or to any of the instructions given by the court.

It therefore follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.—Affirmed.

PARSONS, C. J., and KINTZINGER, HAMILTON, STIGER, and RICHARDS, JJ., concur.